616 So.2d 251 (1993)
MARTIN FOREST PRODUCTS, Plaintiff-Appellant,
v.
Russell P. GRANTADAMS, et al., Defendant-Appellee.
No. 24621-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
Writ Denied June 18, 1993.
*252 Kelly, Townsend & Thomas by T. Taylor Townsend, Natchitoches, for plaintiff-appellant.
Simmons & Derr by Jacque D. Derr, Winnfield, for defendant-appellee.
Before VICTORY, BROWN and WILLIAMS, JJ.
BROWN, Judge.
Martin Forest Products (Martin) agreed to an adverse judgment awarding $25,000 and injunctive relief to Russell and Katherine Grantadams (Grantadams). Thereafter, Martin instituted a separate action against the Grantadams to set aside the injunction ordered by the consent decree. When the trial court denied the requested relief, Martin appealed. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In May 1985, Martin built a chip mill adjacent to a residential area in southeast Winnfield near the intersection of U.S. Highway 167 and U.S. Highway 84.[1] The mill processes and converts pulpwood into wood chips for use in making paper. The Grantadams had built their home approximately sixteen years before the construction of the mill. The mill was located 100 to 150 yards from the Grantadams' residence.
In April 1987, the Grantadams filed suit against Martin seeking both monetary damages and injunctive relief arising out of Martin's operation of the mill. At this time the mill was operating 24 hours a day. The Grantadams claimed that the noise, vibrations *253 and airborne debris made the mill a nuisance and caused physical, medical and emotional injury. Trial was set for December 1, 1988.
On the day of trial the parties entered into a consent judgment and read a stipulation (which was later reduced to writing) into the record. The judgment was signed on December 30, 1988. The stipulation contained an admission by Martin that "its chip mill operation constitutes a nuisance in fact and that plaintiff [Grantadams] is entitled to the abatement thereof by injunction." (emphasis added). Under the terms of the consent judgment, Martin was enjoined from "causing noises to emanate from its property which at any time exceed 45 dBA at the Grantadams' south property line as measured on a sound level meter with an accuracy of no less than ANSI type 2 set on dBA slow setting." Martin's insurers also paid $25,000.00 to the Grantadams pursuant to the settlement. No appeal was taken from the consent judgment.
The injunction against Martin was suspended until July 1, 1989. Martin was ordered to submit to the court by December 30, 1988, a detailed plan for complying with the terms of the injunction. A plan was prepared and timely submitted to the court by Martin's sound expert, Richard Lofton. Although Martin began efforts to reduce the noise level, it deviated from the Lofton plan. Martin requested and received an extension until July 10, 1989. Eventually a rule for contempt was filed by the Grantadams. At the conclusion of the hearing on the contempt rule, the trial court appointed an expert to take noise level readings. The readings taken by the court's expert exceeded 60 dBA.
Shortly thereafter, Martin unilaterally determined that it could not meet the sound restrictions imposed under the consent judgment. Martin claimed that it had spent $270,361.36 attempting to reduce the noise level. On October 12, 1989, Martin filed a petition to set aside the consent judgment. Trial was held on August 21, 1991. The trial court filed written reasons for rejecting Martin's demands. Judgment was signed on May 8, 1992, and from that judgment Martin suspensively appealed.

CONSENT JUDGMENT
Martin attacked only that portion of the consent judgment granting the Grantadams injunctive relief. Martin did not attempt to set aside the $25,000 payment made on its behalf to the Grantadams.
A consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent and thereby put an end to a law suit with each party balancing the hope of gain against the fear of loss. Williams v. Williams, 586 So.2d 658, 661 (La.App.2d Cir.1991). A consent judgment has binding force from the presumed voluntary acquiescence of the parties, not from adjudication by the court. Black Collegiate Services, Inc. v. Ajubita, 600 So.2d 761, 764 (La.App. 4th Cir.1992), writ denied, 606 So.2d 544 (La.1992). Thus, consent judgments, as opposed to contested judgments, may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause. However, a consent judgment needs no cause or consideration other than an adjustment of differences and a desire to set at rest all possibility of litigation. Williams, 586 So.2d at 661; Succession of Simmons, 527 So.2d 323, 325 (La.App. 4th Cir.1988), writ denied, 529 So.2d 12 (La.1988).
In its reasons for judgment, the trial court stated:
Martin's primary motive was to put an end to the litigation so that the chip mill might continue to operate. It had access to experts of its own choosing and was represented by counsel. The negotiations that took place on December 1, 1988, were intense and for the primary purpose of reaching a settlement that would continue operations.
After the rendition of the consent judgment, Martin chose not to follow its own expert's plan and the court can only speculate whether the intended result could have ultimately been achieved. Significantly, Richard Lofton was not called to *254 testify by Martin, and both of the experts who did testify performed no tests to verify impossibility of compliance until long after this petition was filed. Thus, the court can only conclude that Martin Forest Products, Inc., made a unilateral decision not to comply with the terms of the judgment.
As pointed out in the brief of counsel for Mr. and Mrs. Grantadams, there is no evidence of deceit or ill practice, nor is there evidence of physical impossibility, nor of a fortuitous event which rendered performance impossible. Martin Forest Products, Inc. made a decision based on advice of its attorneys and experts with the primary intention of ending the pending litigation. Since that time Martin has not followed any plan and has not made an adequate showing to suggest that the judgment should be set aside.
Like the trial court, we find that Martin's principal cause or motive for entering into the consent judgment was to put an end to the litigation in the most advantageous manner possible. The language of the agreement is plain and unambiguous and provides that the consent judgment was entered to end the litigation. The facts clearly indicate that Martin retained and was advised by an expert prior to and during the negotiations leading up to the confection of the consent judgment and was fully aware of the ramifications of the consent agreement. (emphasis added).
The Grantadams went to court to abate a nuisance. Martin agreed that the operation of its mill was in fact a nuisance and that the Grantadams were entitled to its abatement by injunction. (emphasis added). Martin was given six months to reduce the noise level at its mill as opposed to the mill being closed. Martin's expert, Richard Lofton, advised that the noise level could be reduced to the agreed range. Martin chose not to follow Lofton's plan and did not seek Lofton's testimony at trial.
In preparation for the original lawsuit filed by the Grantadams, Lofton took noise level readings and found that for full operation they were in the 60s dBA range and in the 40s dBA range "at idle." Lofton's proposal stated "ideally the mill noise should be reduced to the point where the noise is the same at the property line when the mill is idle." Both Martin and the Grantadams agreed to Lofton's plan.
The trial court was not clearly wrong in rejecting Martin's general allegation that it cannot comply with the consent agreement as written because of the noise level restrictions. Martin hired Lofton for expert guidance in negotiating a settlement. Lofton drafted a plan approved by the court. Martin, however, deviated from that plan and significantly did not seek Lofton's testimony. The trial court correctly noted that the other experts later hired by Martin to verify impossibility performed no tests until long after the petition to set aside the injunction was filed. Thus, Martin failed to prove an error in fact.
Additionally, Martin's claim of error is based on an error in judgment. The Grantadams sought the closure of the mill but settled for a change in its operation. Martin evaluated its choices and agreed to the compromise. Our Civil Code provides that consent may be vitiated because of error as to a fact but only when it concerns the principal cause or motive and that cause or motive was known or should have been known to the other party. LSA-C.C. Arts. 1948 and 1949. We cannot remedy Martin's entering into a bad bargain. Commercial National Bank in Shreveport v. Keene, 561 So.2d 813, 815 (La.App.2d Cir.1990). A court cannot undermine a contract simply because it was a bad deal for one of the parties. Bergquist v. Fernandez, 535 So.2d 827, 829 (La.App.2d Cir.1988).

COMMERCIAL IMPRACTICALITY
Martin also argues that it is commercially impractical to comply with the consent judgment as written. However, we cannot accept this argument. The fact that compliance with a contract or agreement may be more expensive than originally anticipated is no defense. See Hanover Petroleum Corporation v. Tenneco, Inc., 521 So.2d 1234, 1240 (La.App.3d Cir.1988), writ denied, 526 So.2d 800 (La.1988), holding *255 that commercial impracticability is not a ground for relief from a contract.
For the foregoing reasons, we affirm the trial court's judgment.
AFFIRMED.
VICTORY, J., concurs in result.
NOTES
[1] The residential area was within the city limits while the mill was in the parish bordering on the city boundary. The city, however, was responsible for bringing the mill to the area.