701 So.2d 223 (1997)
The CITY OF KENNER
v.
Jan P. Jumonville, Wife of/and Placide JUMONVILLE.
Nos. 97-CA-125, 97-C-210, 97-C-602.
Court of Appeal of Louisiana, Fifth Circuit.
August 27, 1997.
Rehearing Denied October 17, 1997.
*226 Jan P. Jumonville, Patrick F. Lee, Metairie, for Defendants/Appellants.
James D. Maxwell, Kurt C. Garcia, Glenn B. Ansardi, Kenner, for Plaintiff/Appellee.
Before CANNELLA and DALEY, JJ. and ROBERT J. BURNS, J. Pro Tem.
DALEY, Judge.
This appeal concerns a trial court judgment dated October 23, 1996, which required the defendants, Jan P. and Placide Jumonville, to complete renovations on their home. The appeal has been consolidated with two Applications for Supervisory Writs filed by defendants after the trial court found them twice in contempt of the trial court's judgment. Defendants appeal the trial court's judgment, arguing several assignments of error. They also seek this court's supervisory review of the two contempt judgments.
We amend and affirm the trial court's judgment of October 23, 1996. We deny the Jumonvilles' two Applications for Supervisory Writs.

Facts
On or about August 6, 1993, the City of Kenner issued a building permit to Placide Jumonville for interior and exterior renovation work at his home at municipal address, 50 Granada Drive, Kenner, Louisiana.[1] On April 18, 1995, the City of Kenner filed a Petition for Preliminary and Permanent Injunction against defendants in First Parish Court. On or about July 27, 1995, the First Parish Court ordered the matter transferred to the 24th Judicial District Court. The petition alleged numerous violations of City Ordinance 1427, specifically Section 5-84, allegedly not prosecuting the renovations in accordance with the building permit issued to the Jumonvilles. The petition also alleges that the structure was a nuisance. The petition sought to enjoin the Jumonvilles from further violations by requiring them to complete their renovations by certain deadlines. The Jumonvilles filed an Answer, Reconventional Demand, and Third Party Demand.
On February 22, 1996, the Jumonvilles and the City of Kenner signed a Consent Judgment, which set up schedules by which the renovations would proceed and also established deadlines when certain phases would be completed. This judgment was signed and rendered by the Court. According to the judgment, certain specific exterior work was to be completed by August 31, 1996, and certain interior work was to be completed by February 28, 1997.
On August 9, 1996, the Jumonvilles filed a Motion to Modify Consent Judgment, alleging that their structural engineer's report (rendered August 5, 1996) indicated that foundation pilings were necessary and that this problem, with others, would prevent the exterior work from being completed by the August 31, 1996, deadline. The petition further noted that framing errors had been discovered, inferior framers had been fired, a suitable framer could not be found, and weather problems had further delayed the renovations. They asked that all deadlines be extended 90 days.
In response, the City filed a Motion to Modify Consent Judgment, arguing that defendants had had ample time to complete their home, and asked that the Consent Judgment be modified to include, for noncompliance, a penalty of contempt of court and a fine of $1000 per week of noncompliance. Both motions came for hearing on October 4 and 17, 1996.
Kenner's Memorandum in Support of their motion alleged that the Jumonvilles purchased the property on December 14, 1987, and have been engaged in ongoing renovations since that time. Alleging that defendants unreasonably delayed the work, *227 Kenner filed their Petition for Preliminary Injunction, claiming that the defendants violated their building permit, maintained an unsafe building, and that the building failed to meet minimum housing standards set by the City of Kenner Code of Ordinances, specifically the Kenner Building Regulations, and that the unfinished building was a nuisance.
Prior to the hearings on the Motions to Modify, on September 3, 1996, Kenner filed a Rule for Contempt of Court against defendants based upon the passage of the August 31, 1996, deadline without completion of the exterior work. This rule was set to be heard with the other motions.
After the hearing on October 4 and 17, on October 18, 1996, the court rendered judgment granting Kenner's Motion for Contempt and granted in part defendants' Motion to Modify Consent Judgment. An amended judgment was rendered on October 23, 1996, correcting typographical errors in the October 18, 1996 judgment.[2] The court found that the defendants were in contempt of the February 22, 1996 Consent Judgment, in that they had failed without just cause to timely complete the work at 50 Granada Drive in accordance with the Consent Judgment. The court ordered defendants to pay Kenner $1000 in penalties by October 31, 1996. This judgment further established detailed phase schedules and new deadlines for the renovations, and established specific penalties for the defendants' failure to comply therewith.
The Jumonvilles appealed the October 23, 1996 judgment. On appeal, they assign the following errors of the trial court.
1. The trial court erred in ordering the Jumonvilles to complete the renovation of their home under arbitrary deadlines, when there exists no city or state law setting forth any deadlines whatsoever within which to complete renovations, and holding them in contempt with future penalties when there is no law whatsoever to support such an order.
2. The trial judge violated the Jumonvilles' constitutional rights guaranteed under the Louisiana Constitution and Constitution of the United States, under the 14th Amendment in violation of due process and equal protection under the laws of the State and the United States and denied the Jumonvilles' peaceable possession of their property.
3. The trial judge erred in holding the Jumonvilles in contempt for not completing construction by a deadline when there was no evidence whatsoever of wilful noncompliance.
4. The trial judge erred in not finding the City in contempt and in violation of Article 863 and the Jumonvilles should have been awarded attorney fees and all cost [sic].
In subsequent proceedings, the City of Kenner filed a second Motion for Contempt on December 30, 1996, which was heard on January 21, 1997. The trial court rendered judgment on January 23, 1997, finding defendants in contempt of the court's October 23, 1996 judgment and the February 22, 1996 Consent Judgment, and ordering the payment of fines as per that judgment. Defendants have filed Writ No. 97-C-210, asking this court to review that judgment.
Writ No. 97-C-602 concerns a June 16, 1997 trial court judgment, finding defendants in contempt of the October 23, 1996 judgment, for further noncompliance therewith.

First Assignment of ErrorArbitrary Deadlines
In their first assignment of error, the Jumonvilles complain that the October 23, 1996 judgment sets arbitrary deadlines for the completion of their home, and penalties for noncompliance with the schedule, without legal authority.
The October 23, 1996 judgment stems from the February 22, 1996 Consent Judgment between the parties, which set deadlines on various stages of the renovations. A consent judgment is in effect a bilateral contract between the parties which gets its binding force from the consent the *228 parties gave, rather than from adjudication by the courts. Ortego v. State, Dept. of Transp. & Development, 95-830 (La.App. 3 Cir. 4/24/96), 673 So.2d 1168, rev'd on other grounds, 689 So.2d 1358 (La.1997). A party to a consent judgment cannot directly appeal that judgment; the party must first invalidate his consent. Hartwig Moss Ins. Agency, Ltd. v. Kelly, 96-1423 (La.App. 4 Cir. 1/29/97), 688 So.2d 196.
In this appeal of the October 23, 1996 judgment, defendants indirectly put at issue the validity of their consent to the Consent Judgment. Mr. Jumonville argued that he is inexperienced as a builder and did not take into account other delays such as weather, availability of workmen, etc. He argues that these factors controlled his ability to complete the work in a timely manner.
The Jumonvilles also cite the late discovery, in April or May, 1996, of pilings under the structure that were incorrectly placed. The record shows that it was not until August, days before the consent judgment's deadline, that a structural engineer was called to inspect the foundation. The Jumonvilles also argue that many of their improvements exceed code requirements and are more time consuming to install.
After a review of the entire record, we conclude that the deadlines in the Consent Judgment were not arbitrary; they were agreed to by both the Jumonvilles and the City of Kenner. The defendants cannot point to any legally supportable reason why their consent to the judgment should be vitiated. Mr. Jumonville pleads inexperience in building, however, the record shows that a building permit was issued in 1993, construction has been ongoing (though sporadically) since at least 1988, and all during these years Mr. Jumonville acted as the general contractor. The Jumonvilles allege that in February, they did not know of the problems with the pilings; however, they did not call the first structural engineer to investigate the foundation until July. They had previously agreed that exterior structural work was to be completed by August 31, 1996. The trial court reasonably concluded that the Jumonvilles were not acting with due diligence to attempt to meet the deadline they had agreed to.
Furthermore, the record shows that Mrs. Jumonville is a practicing attorney, and as such is presumed to know the legal consequences of a Consent Judgment. The court cannot undermine a contract simply because it was a bad deal, or is believed to be, for one of the parties.[3]Martin Forest Products v. Grantadams, 616 So.2d 251 (La. App. 2 Cir.1993). Likewise, the fact that compliance with a contract or agreement may be more expensive than originally anticipated is no defense. Id. The Jumonvilles argue that no law supports the creation of these deadlines, but we find that these deadlines are in fact supported by the general law of contracts.
In their Motion to Modify Consent Judgment, the Jumonvilles asked for a 90 day extension of all deadlines in the Consent Judgment. The trial court's October 23, 1996 judgment grants deadlines more generous than asked for by the Jumonvilles in their Motion to Modify. In setting these deadlines, the court considered the testimony of the Jumonvilles, input from both parties' attorneys, and testimony from the defendants' expert witnesses. The defendants have failed to show that the deadlines in either the Consent Judgment or the October 23, 1996 judgment are arbitrary or unsupported by law. They have also failed to vitiate their consent to the Consent Judgment.
The Jumonvilles also argue that the deadlines set by the court constitute an abuse of police power by the City of Kenner. They argue: "The court's judgment of arbitrary deadlines does not promote a valid or legitimate objective of a municipality that prevents some offense or manifest evil or preserves the public health, safety, morals or general welfare and should be reversed." We disagree. We find that the deadlines are not arbitrary. The City of Kenner has an *229 interest in seeing that residential construction is completed in a timely fashion, for the safety of the community where the construction is located. The record shows that this house has been under construction since 1988. Kenner's pleading alleges that the neighbors have voiced concerns over safety issues and that the structure constituted a nuisance to the surrounding community. Mr. and Mrs. Jumonville correctly point out that no evidence was introduced to support the City of Kenner's claim of safety violation and/or nuisance, but the Jumonvilles ignore the fact that no proof was necessary since the parties agreed to a Consent Judgment. This court will not require the City of Kenner to prove facts which the Jumonvilles tacitly accepted by entering into the Consent Judgment.
Finally, the Jumonvilles did not argue abuse of police power to the trial court, especially prior to signing the Consent Judgment. Their agreement to deadlines in the Consent Judgment implicitly waives their objections to Kenner's suit. The Jumonvilles then asked for an extension to the construction deadlines. We find no abuse of the police power in the parties' and the court's establishment of new deadlines in the October 23, 1996 judgment to complete the construction.

Second Assignment of ErrorConstitutional Issues
The Jumonvilles argue that the judgment of October 23, 1996 is in violation of their state and federal constitutional rights and violates due process and equal protection rights under both constitutions. They argue that the establishment of construction deadlines is an unconstitutional exercise of police power by the City of Kenner. They also argue that the building codes and ordinances relied upon by Kenner are unconstitutional.
Defendants pled these constitutional issues in their Reconventional and Third Party Demand, prior to the signing of the Consent Judgment; however, these issues were not argued before the trial court, nor briefed. Defendants did not produce any evidence on this issue. Ordinarily, the unconstitutionality of a statute must be presented first to the trial court and must be specially pleaded with particularity. Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94), 646 So.2d 859.
Moreover, we find that by entering into the Consent Judgment, defendants have waived these constitutional defenses. Defendants pled these constitutional defenses in their Answer, Reconventional Demand, and Third Party Demand, filed in June, 1995. The Consent Judgment was signed and entered into the record on February 22, 1996. The Consent Judgment has the effect of compromising the parties' differences. The Jumonvilles cannot now resurrect these constitutional defenses in response to the City of Kenner's Motion for Contempt.

Third Assignment of ErrorContempt
Next, the Jumonvilles argue that the judge erred in finding them in contempt of the Consent Judgment, when there was no evidence of wilful noncompliance.
The wilful disobedience of any lawful judgment or order of the court constitutes a constructive contempt of court. Contempt proceedings in civil cases are regulated by LSA-C.C.P. art. 221-227 and LSA-R.S. 13:4611. LSA-C.C.P. art. 224 provides in pertinent part:
A constructive contempt of court is any contempt other than a direct one. Any of the following acts constitute a constructive contempt of court:
* * * * * *
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
LSA-C.C.P. art. 227 provides:
A person may not be adjudged guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law.
The punishment which a court may impose upon a person adjudged of contempt of court is provided in La.R.S. 13:4611.
LSA-R.S. 13:4611 provides in pertinent part:
Except as otherwise provided by law:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile *230 courts and the city courts may punish a person adjudged guilty of contempt of court therein, as follows:
* * * * * *
(d) For any other contempt of court, including disobeying an order for the payment of child support or alimony or an order for the right of visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.
To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. In making this determination, the trial court is vested with great discretion. Reeves v. Thompson, 95-0321 (La.App. 4 Cir. 12/11/96), 685 So.2d 575.
The contempt judgment on appeal was rendered on October 23, 1996. The trial court found that the Jumonvilles had exhibited wilful noncompliance with the terms of the February 22, 1996 Consent Judgment. The court based its findings upon testimony by Mr. Jumonville, his witnesses, and documentary evidence.
The record shows that the Jumonvilles discovered the foundation problems around late April or early May, 1996. These problems consisted of the discovery that portions of the slab were not supported by pilings, and in some cases the pilings were found outside of the slab's perimeter, away from the grade beams. The Jumonvilles did not call the first structural engineer, Mr. Hall, until around July 1. The structural engineer who testified, Mr. Carubba, was not hired until early August, 1996, within days of the deadline for the exterior work. Mr. Jumonville admitted that the home has been under construction since late 1987 and early 1988, and that since that time until the present it is not habitable. He further admitted that he has acted as his own contractor and has had great trouble finding workers who met his standards. He also admitted that the plans have been altered and that the Jumonvilles desired many changes, such as different brick, that have necessitated extra time in preparation and installation.
The record shows that Mr. Neil Hall, his first structural engineer, visited the property around July 1, 1996, and found no evidence of distress in the slab or other slab failure.
Mr. Jumonville engaged an architect on or about August 21,1996. Mr. Roy Carubba, a structural engineer who testified as an expert for the Jumonvilles on October 17, 1996, stated that he first inspected the property around September 6, 1996. He stated that the property is around 23 years old and that the soil subsidence found there is common to the area, and was probably in existence for several years, evidenced by standing water. Mr. Carubba stated that the slab was sufficient for the current structure, but that the Jumonvilles' changes (the heavier brick and the increased studs, for example) would necessitate the new pilings. He did not see any signs in the slab that it had been inadequate for the past 23 years. He opined that driving the new piles should require around thirty days work.
Mr. Peter Waring, the architect, testified next. He stated that he engaged Mr. Carubba because of conditions at the house that gave him concern, such as the soil subsidence. He testified that they were presently working through the final design working drawings. Waring stated that the plans called for a roof system that is approximately five times as heavy as a standard GAF seal tab shingle roof. He agreed with the previous testimony and reports that the slab showed no structural failures, but also agreed that the position of piles outside the grade beam was not acceptable and should be corrected by driving new piles in the correct locations. Waring testified that the piling plan submitted by the Jumonvilles to Kenner was not stamped by an architect or an engineer. On redirect, Waring said that the piling and outside veneer of the home could be completed in approximately three to four months if pursued in a very aggressive way.
Jumonville blamed the rainy weather on his construction delays; however, he was not able to establish that the weather was unusually rainy for summer in New Orleans. He admitted that the Consent Judgment did not *231 consider weather delays. Jumonville testified that he hired approximately five men as laborers or carpenters, and that he fired them all within the six month period covering the Consent Judgment. Jumonville applied for the piling permit on August 21, 1996, just ten days before the expiration of the exterior work deadline, and testified that he knew then he would not be able to complete the work in ten days. Jumonville admitted that he did not call the City of Kenner to inquire about the permit until after the August 31, 1996 deadline.
During cross-examination of Mr. Jumonville, Kenner introduced a series of photographs of the property taken October 3, 1996, the day before the hearing in question. These photographs showed that the outside of the house was not finished, nor the roof. Neither windows nor doors were in place. (Windows were ordered, but not paid for.) Jumonville testified that most of the framing had been in place for several months, and sometimes longer. He stated when he signed the Consent Judgment, he knew that the construction would be heavier than "normal" construction and far above code standards.
At the time of his testimony, Mr. Jumonville did not have a piling plan, architectural drawings, or engineering design drawings or foundation studies from Mr. Carubba in writing.
The above evidence and testimony were more than adequate for the trial court to find that defendants were in wilful noncompliance with the October 23, 1996 judgment, and the judgment of contempt is well supported. The trial court is in a superior position to the appellate court to observe the demeanor and credibility of witnesses, and absent manifest error, the trial court's conclusions should be upheld. The evidence as a whole shows that the construction and necessary alterations of the home were not prosecuted in a timely fashion. The Consent Judgment was signed on February 22, 1996. The first significant structural activity appears to have taken place around July 1, with the hiring of Mr. Hall for a structural report, after the discovery of the misplaced pilings in late April or early May. Mr. Waring was not hired until August 21, 1996, and Mr. Carubba was not hired until September, past the deadline. Mr. Jumonville testified that the enhanced brick, roofing, and framing were part of his plans at least by the time of the Consent Judgment, but it appears that steps were not taken to address the slab concerns until July, four full months after the Consent Judgment and only 60 days before the August 31, 1996 deadline. Moreover, Carubba testified that soil subsidence was common in this area, and in his opinion, these conditions affecting the slab were known to the Jumonvilles significantly in advance of the Consent Judgment.
However, we disagree with the portion of the October 23 judgment ordering the Jumonvilles to pay the City of Kenner $1000 in penalties. While the court's powers of punishment for contempt include fines, LSA-R.S. 13:4611, the judgment ordered the Jumonvilles to pay a "penalty" to the City of Kenner. The consent judgment contained no penalty clause. However, the record and judgment are clear that this "penalty" is a fine for finding the Jumonvilles in contempt of court. LSA-R.S. 13:4611(1)(c) and (d) limit the amount a court may fine a person for an act of constructive contempt to $500.
The court also erred in making the fine payable to the City of Kenner. A contempt proceeding is designed for the vindication of the dignity of the court rather than for the benefit of a litigant. Nungesser v. Nungesser, 558 So.2d 695 (La.App. 1 Cir. 1990). A penalty payable to the City of Kenner does not vindicate the court; it benefits the City of Kenner. For these reasons, that portion of the judgment awarding the penalty is amended to reflect that this penalty is a fine, to reduce the fine to $500, and to reflect that the fine is payable to the 24th Judicial District Court, not the City of Kenner.

Assignment of Error FourArt. 863
The Jumonvilles argue that the City of Kenner should have been found in contempt, in violation of Art. 863, and the Jumonvilles should have been awarded attorneys fees and costs.
*232 The Jumonvilles argue that art. 863 sanctions should be awarded because the City of Kenner's petition is unsupported by law, ordinance or building code, and they produced no evidence to support the allegations in the petition. Their argument here substantively mirrors their arguments on the first three assignments of error.
As reflected above, this court disagrees with the Jumonvilles' position and today affirms a judgment in favor of the City of Kenner. As such, we see no violation of LSA-C.C.P. art. 863.

Judgments of ContemptWrit Applications
In Writ Application No. 97-C-210,[4] the Jumonvilles ask this court to reverse the trial court's judgment of January 23, 1997, which found them in contempt of the October 23, 1996 judgment and the Consent Judgment, ordered them to pay fines in accordance with that judgment, and set new deadlines for the completion of the construction. The trial court found the defendants in wilful noncompliance with the court's previous judgments.
It is important to note at this juncture that the appellate record's transcripts end with the transcription of the October 17, 1996 hearing. This Writ Application does not contain a transcript of the contempt hearing held on January 21, 1997, but does contain the trial judge's detailed Judgment and Reasons.
The Writ Application itself argues that the court had no basis for finding them in wilful non-compliance of the court's previous judgments. In the writ, the Jumonvilles allege that between September of 1994 and April 18, 1995, the chief of the Kenner Department of Inspection and Code Enforcement told them that a Kenner City Council member was applying political pressure to force the renovations to a finish because of complaints of constituents. The appellate record contains no information on this scenario, and thus we are unable to verify the substance of these allegations. However, we deem this information irrelevant to the application before us, as these alleged events took place prior to the signing of the Consent Judgment in February of 1996, and as such, are not relevant to the trial court's determination in January of 1997 that the Jumonvilles were in contempt of a judgment rendered in October of 1996.
The Jumonvilles argue that they were not issued a piling permit until November 15, 1996, which caused them to have to renegotiate piling prices the Jumonvilles obtained in August of 1996. Jumonville alleged that the piling prices doubled between August and November, but we do not have any documentary proof of this claim.
The Jumonvilles also argue the same constitutional issues that they argued in the appeal; however, there has been no showing that these constitutional issues were first considered by the trial court. The trial court's written reasons for judgment give us no indication that these issues were in fact argued. As such, these issues are not properly before us.
The Jumonvilles also argue that the court's judgments and orders are unsupported by any law whatsoever. However, they signed a Consent Judgment, which is a contract between them and the City of Kenner. As we said above, the law of contracts is the law that supports all subsequent court orders with deadlines that follow the Consent Judgment. The Jumonvilles agreed in the Consent Judgment to finish their home according to the deadlines. They have failed to show that the Consent Judgment is invalid in any way. The subsequent judgments have extended the deadlines at the request of the Jumonvilles.
On the application as made, the Jumonvilles have not made a sufficient showing that the trial court erred in its findings. As relators, they bear the burden of proof. Our review of the judge's written reasons strongly shows that the trial court carefully considered the evidence and the testimony before her, but without a transcript and complete record of that hearing and the evidence introduced, the Jumonvilles have given us *233 nothing to review. Therefore, we decline to disturb the trial court's January 23,1997 judgment, which found the Jumonvilles in contempt of the court's judgments of February 22, 1996 and October 23, 1996.

Writ Application 97-C-602
The Jumonvilles filed this Writ Application (97-C-602) following the trial court's judgment of June 16, 1997, finding them in contempt of the February 22, 1996 and October 23, 1996 judgments. This court ordered the Writ Application consolidated with appeal 97-CA-125 and writ no. 97-C-210 for consideration. This court ordered a stay of all trial court proceedings pending the outcome of the consolidated cases in this court, and allowed the parties to file supplemental briefs. No transcript of this contempt hearing appears in the record. A transcript of only the judge's ruling has been attached to the writ application.
In this Writ Application, the Jumonvilles ask us to review the trial court's judgment of June 16, 1997, which granted the City of Kenner's Third Motion for Contempt. A copy of this Motion for Contempt is not included in the Writ Application, nor are any other responsive pleadings included in the Writ Application or the Supplemental Memorandum, as required by Uniform Rules of the Courts of Appeal, Rule 4-5(h). These omissions, along with the absence of the hearing's transcript, are fatal to our ability to consider the Jumonvilles' application.
This writ application raises two assignments of error: 1) LSA-R.S. 13:4611 unconstitutional and 2) the district court judge abused her discretion in ordering the payment of $ 9050.00 in excess of the maximum fines under LSA-R.S. 13:4611(1)(d) and the imprisonment of the Jumonvilles for failure to pay the excessive fine.
The Jumonvilles' supplemental brief raises additional assignments of error. They argue that the Rule to Show Cause Why the Jumonvilles Should Not be Imprisoned fails to specifically, precisely and definitely inform the Jumonvilles what they must do to avoid imprisonment; that the evidence fails to show that the Jumonvilles are deliberately refusing to comply with the court's order; that the Jumonvilles were not afforded their constitutional protections applicable in "a civil contempt proceeding criminal in nature"; that imprisonment will prevent compliance with the court's order; that the judge ordered imprisonment at the 50 Granada address, which is uninhabitable; that the judge abused her discretion by including "rain days" as work days in her fine for contempt; and that any further contempt rule should be held before a different trial court judge.
The Jumonvilles fail to present any evidence that the constitutionality of LSA-R.S. 13:4611 was argued before the trial court. No responsive pleadings are included in this Writ Application, and the transcript attached to the application does not indicate that the parties argued the constitutional issue before the trial court. Therefore, we do not address this issue. Vallo v. Gayle Oil Co., Inc., supra.
The Jumonvilles argue that the fine of $9050 is excessive under LSA-R.S. 13:4611, which authorizes a maximum $500 fine. We disagree. The Jumonvilles' fines represent $50 per day of the home's noncompletion, as per the terms in the October 23, 1996 and January 23, 1997 judgments. Those judgments specifically state that the fines are per a five day work week and exclude legal holidays from the calculations. Each $50 per day fine is for a separate act of contempt of court. Implicit in the statute is that no single act of contempt shall be fined more than $500. The Jumonvilles' fines continue to accrue, because each day they do not finish their home is a separate and distinct act of contempt under the judgments. To avoid the accrual of the fines, the Jumonvilles can either finish the home or convince the trial court that their failure to do so is not wilful or deliberate. The Jumonvilles have failed to do either one.
Nothing in LSA-R.S. 13:4611 prohibits the accrual of fines for separate acts of contempt. We find that LSA-R.S. 13:4611 is not violated. The law in this state clearly recognizes the validity of judgments that assess a per day contempt fine for non-compliance. See Parish of Jefferson v. Muhammad, *234 96-572 (La.App. 5 Cir. 12/11/96), 686 So.2d 905.
We find the June 16, 1997 judgment is clear in setting forth what the Jumonvilles must to do to avoid future contempt proceedings: finish the renovations according to the deadlines set in the previous judgments. The trial court has also stated, several places in the record, that if the Jumonvilles feel that they cannot meet specific deadlines, they can and should apply to the court for an extension before the passing of the deadline, rather than wait until the deadline passes before they make the court aware of problems.
The Jumonvilles claim that under this court's interpretation of LSA-R.S. 13:4611 in Champagne v. Champagne, 541 So.2d 933 (La.App. 5 Cir.1989), their fines are punitive in nature and, therefore, must be set aside as the Jumonvilles were not afforded "the Constitutional protections guaranteed them." However, their brief does not specify what Constitutional protections they were denied. Prior to each judgment of contempt, the Jumonvilles were present in open court for a hearing with counsel present, with the ability to present evidence and witnesses, and cross examine witnesses, as per LSA-C.C.P. art 225. Given these facts, we cannot see what constitutional protections have been denied the Jumonvilles.
Moreover, we disagree with defendants' interpretation of Champagne, supra. Clearly, the Jumonvilles' contempt is civil in nature.[5] The fines are remedial in nature, because the party, "can avoid paying the fine simply by performing the affirmative act required by the court's order," (Champagne, p. 936), i.e. complying with the deadlines in the court's previous orders.
In Champagne, the defendant, a husband who owed alimony arrearages, was sentenced to 90 days "flat time" without any "purge clause," which is a provision in the contempt judgment that allows the defendant to avoid the imprisonment if he performs the required act or otherwise complies with the court's judgment. Mr. Champagne's 90 day sentence was not avoidable or limited by his payment of the outstanding alimony, and, therefore, this court struck down the sentence.
The Jumonvilles' situation is far different. The judgments here have a self operating "purge clause" regarding the fines: finish the house according to the deadlines, and fines will either not accrue or will stop accruing.
The Jumonvilles' argument regarding imprisonment is premature. The June 16, 1997 Judgment of Contempt ordered the parties to reconvene on June 13, 1997,[6] to determine possible jail sentences to be given defendants in this matter. This hearing was postponed until June 20, 1997, and was ultimately stayed by this court's order of June 20, 1997. No hearing has been held and no imprisonment has been ordered. Therefore, the Jumonvilles' assignments of error related to imprisonment are premature at best. Until such time as this court is presented with a lower court order actually ordering the Jumonvilles' imprisonment for contempt of court, we find these issues are premature and decline to review them at this time.[7]
Next, the Jumonvilles argue that the evidence fails to show that they have deliberately refused to comply with the court's orders. With this we will also consider the Jumonvilles argument that the judge should not *235 have included rain days as work days in her fine for contempt.
The Jumonvilles have attached a number of documents to their supplemental brief. However, we are unable to determine whether this documentary evidence was introduced at the May 23, 1997 hearing, because the transcript contains only the judge's ruling. Likewise, the exhibits themselves are not stamped or marked in any way to show that they might have been introduced into evidence at the hearing. As such, we cannot determine if the judge used this evidence in arriving at her judgment. This court is prohibited from considering evidence not presented to the trial court. LSA-C.C.P. art. 2164.
In the transcript, the judge notes that she added up the building expenses submitted by the Jumonvilles. (This evidence, which was considered by the trial court, is not attached to the Writ Application or otherwise in the record.) She notes that the first check is dated January 24, 1997, the day after the last contempt ruling. The amounts add up to around $4000, or approximately $1000 per month. The judge felt that these were very inadequate expenditures on a home that needed the amount of work to finish in the time frame under the judgments. She reviewed photographs and found that only the pilings had been completed and scaffolding erected, but virtually nothing else had changed on the exterior of the house, since the last hearing in January.
Without a transcript and a knowledge of what evidence the judge reviewed, we cannot say that the trial court erred in its determinations. We find convincing the judge's statement that the photographs reflect only new scaffolding and not new work on the home.
We note that the January 23, 1997 judgment, which imposes the $50 per day fine for noncompletion, does not exclude rain days. The October 23, 1996 judgment, which contains a detailed fine schedule, delineates $50 per day fines based upon a five day work week and excludes legal holidays. It, too, does not exclude rain days, only weekends and holidays. Nor did the Consent Judgment exclude rain days. In the transcript of the hearings on October 4 and 17, 1996, Mr. Jumonville admits he knew the Consent Judgment did not provide for rain days. Therefore, the Jumonvilles were on notice that rain days were not "excused".
Last, the Jumonvilles argue that the next hearing in the trial court must be conducted by another trial judge. However, the cases they cite address direct contempt of court, which is an act of contempt committed in the immediate view and presence of the court. LSA-C.C. art. 222. Hearings on direct contempt must be conducted by a different judge than whom the act constituting the contempt was directed against. The Jumonvilles have been found to have committed acts of constructive contempt of court, and thus their argument is misplaced. The law does not require these hearings to be held before a different judge than the one whose judgment or order was disobeyed.
The Jumonvilles' argument in brief alleges the bias of the trial judge because she has found the Jumonvilles in contempt of court each time Kenner has filed a Motion for Contempt. An unfavorable ruling, and even several, is not evidence of a trial judge's bias against a party. If the Jumonvilles believe the trial court is biased against them, they should follow the procedure in the trial court for the recusal of trial judges. These procedures are found in LSA-C.C.P. art. 151 et seq.

Conclusion
We affirm the trial court's judgment of October 23, 1996, but amend that portion of the judgment reflecting that the fine for contempt of court is lowered to $500.00 and to reflect that payment should be made to the 24th Judicial District Court, not to the City of Kenner. We further find that on the two Writ Applications, the Jumonvilles have not made the requisite showing that the trial court's judgments of contempt are erroneous, and we deny the Writ Applications.
The parties share a mutual goal, the completion of the Jumonvilles' residence. The time, energy and expense incurred by the Jumonvilles in this litigation could have *236 been better directed towards the accomplishment of that goal.
AFFIRMED AS AMENDED; WRIT APPLICATIONS DENIED.
NOTES
[1] The record shows that the Jumonvilles purchased the home in December of 1987.
[2] For simplicity, we refer only to the October 23, 1996 judgment, because the latter judgment made no substantive changes in the October 18, 1996 judgment.
[3] This court specifically does not address the issue of whether the consent judgment was a "bad deal" for the Jumonvilles.
[4] The Jumonvilles filed both a Motion For Appeal and a Notice of Intent for a writ application regarding this judgment. The matter was presented to and accepted at this court as a writ application, although both parties sometimes refer to 97-C-210 as an appeal.
[5] Here, the Jumonvilles argue that the trial court's mention of imprisonment made the proceeding criminal in nature. However, it is only once a criminal sentence has been imposed in a contempt proceeding (ancillary to a civil proceeding) that the proceeding assumes the quality of a criminal or quasi-criminal proceeding. Adkins v. Adkins, 29,088 (La.App. 2 Cir. 1/31/97), 687 So.2d 1109. There is no order of imprisonment in this case.
[6] Evidently, the judgment signed June 16 was actually prepared prior to June 13th.
[7] We take judicial notice of LSA-C.C.P. art. 226, which allows the court to order imprisonment of a person found in contempt "when a contempt of court consists of the omission to perform an act which is yet in the power of the person charged with contempt to perform." The Jumonvilles' contempt consists of failure to meet the deadlines found in the February 22, 1996, October 23, 1996, and January 23, 1997 court orders, which are acts in the power of the Jumonvilles.