STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-149


STACEY A. RYAN, ET AL.

VERSUS

CALCASIEU PARISH POLICE JURY, ET AL.



**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2014-4268
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.


**AFFIRMED.**




**Terrence D. McCay**
**Kean Miller LLP**
**One Lakeshore Drive, Suite 1150**
**Lake Charles, LA  70629**
**(337) 430-0350**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Sasol Chemicals (USA), LLC**

**Gregory M. Anding**
**Erin L. Kilgore**
**Erich P. Rapp**
**Troy J. Charpentier**
**Kean Miller LLP**
**P. O. Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Sasol Chemicals (USA), LLC**

**Russell J. Stutes, Jr.**
**Stutes & Lavergne, LLC**
**600 Broad Street**
**Lake Charles, LA 70601**
**(337) 433-0022**
**COUNSEL FOR INTERVENORS/APPELLEES:**
    **Carla Meyers**
    **Vernon C. Meyer**

**Richard E. Wilson**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR INTERVENORS/APPELLEES:**
    **Carla Meyers**
    **Vernon C. Meyer**

**SAUNDERS, Judge.**

This case involves an appeal from a contempt of court proceeding wherein the trial court found that a servient estate, under La.Code Civ.P. art. 224(2), "intentionally, knowingly, and purposefully, without justifiable excuse" violated a consent judgment it entered into with a dominant estate. The consent judgment granted the dominant estate a servitude to access its lands through a certain location located on the servient estate's property. The trial court found that the servient estate prevented the dominant estate from exercising its servitude 239 separate instances and fined the servient estate $500.00 for each of those violations under La.R.S. 13:4611 totaling of $119,500.00. Additionally, the trial court awarded the dominant estate $32,715.00 in attorney's fees for work done at the trial level.

Before us is the servient estate's suspensive appeal of the trial court's judgment. Additionally, the dominant estate has requested attorney's fees for work done on this appeal.

**FACTS AND PROCEDURAL HISTORY:**

On October 5, 2016, Vernon Christopher Meyer and Carla Michelle Meyer (the Meyers) filed a second supplemental and amending petition seeking an injunction against Sasol Chemicals USA, LLC (Sasol). The Meyers sought an injunction that required Sasol to remove all impediments, restore convenient access, reconnect telephone lines, and restore basic services to the Meyers property per the Matheson Servitudes (the servitude) in favor of the Meyers along Matheson Road in Calcasieu Parish.

The Meyers asserted that the servitude provided them access to Houston River Road and that by erecting a security checkpoint referred to as Gate 5 on the corner of Matheson Road and Houston River Road, Sasol interfered with their use of the servitude. Prior to a hearing on the matter, the Meyers and Sasol memorialized an

agreement between them by a consent judgment dated November 28, 2017. Relevant to Gate 5, the access point at issue in this case, the consent judgment states, "IT IS FURTHER ORDERED, ADJUDGED and DECREED that once Matheson road is reopened, the Meyers, their family members, customers, vendors and guests agree that Gate 5 will be the exclusive point of ingress and egress to the Property and further will cease use of Gate 4." Thereafter, Matheson Road reopened and the Meyers used Gate 5 exclusively.

According to Sasol, after the consent judgment was confected, circumstances evolved. According to Sasol, it would be forced to encounter an "emergency" should the Meyers continue to use Gate 5. This "emergency," according to Sasol, triggered a provision in the consent judgment where Sasol could "block, restrict, impede or reduce access" to Gate 5 "in the case of a safety, health or security emergency."

This "emergency" of Sasol's was a "security emergency" according to the testimony of its senior manager of occupational safety and security, Scott Tyler. That "security emergency" is that Sasol could no longer comply with both the Chemical Facility Anti-Terrorism Standards (CFATS) 6 CFR § 27.100, *et seq*. and the consent judgment's requirement of allowing the Meyers access through Gate 5. Sasol's planned commissioning and start-up activities triggered obligations under CFATS that required Sasol to secure its perimeter against private vehicles and other individuals who are not under Sasol's employ or contractual control. Such individuals not under Sasol's control include the Meyers and their guests.

Based on these alleged changes in circumstances, on November 7, 2018, Sasol sent correspondence to the Meyers that "Matheson Road and Gate 5 will have to be temporarily closed" starting December 7, 2018. Further, Sasol advised that it would relocate the Matheson Servitudes under La.Civ.Code art. 748 to run through Gate 4.

2

On November 9, 2018, just two days after receiving notice of Sasol's intent, the Meyers filed a rule for contempt by Sasol of their consent judgment. The matter was set for a hearing on November 16, 2018. On November 15, 2018, a day before the rule was to be heard, Sasol removed the case to federal court, after which it was then remanded to state court.

While the matter was in litigation, on May 30, 2019, Sasol began preventing the Meyers from using Gate 5 and, instead, rerouted them to Gate 4. Following this decision by Sasol, the Meyers and their guests were denied use of Gate 5 a total of 293 separate, documented instances.

On November 6, 2019, a hearing was held on the Meyers' rule for contempt. The trial court found that because Sasol was aware of CFATS regulations prior to agreeing to the consent judgment with the Meyers, its rerouting from Gate 5 to Gate 4 was a willful violation of the consent judgment without justification. Further, the trial court found each of Sasol's denials were 293 separate and distinct contemptuous, willful violations of the consent judgment. As such, the trial court fined Sasol $500.00 for each separate instance for a total of $119,500.00. Additionally, the trial court awarded the Meyers $32,715.00 in attorney's fees.

Sasol has appealed this judgment of the trial court suspensively. That appeal is now before this court wherein Sasol asserts two assignments of error. The Meyers have answered Sasol's appeal and requested additional attorney's fees for work done on appeal.

**ASSIGNMENTS OF ERROR:**

1. The Trial Court manifestly erred in holding Sasol in contempt of court because Sasol did not willfully violate the parties' November 28, 2017 Consent Judgment.

2. The Trial Court manifestly erred in finding each instance of redirection by Sasol to the Meyers' property, in accordance with the Consent

3

Judgment, was a separate and distinctly punishable violation of the Consent Judgment.

## ASSIGNMENTS OF ERROR NUMBER ONE:

In its first assignment of error, Sasol argues that the trial court erred in holding it in contempt of court because it did not willfully violate the parties' November 28, 2017 Consent Judgment. We disagree.

"The trial court has vast discretion in determining whether a party should be held in contempt for disobeying a court order, and its decision will be reversed only when the appellate court discerns an abuse of that discretion." *Harley-Davidson Credit Corp. v. Davis*, 13-214, p. 7 (La.App. 3 Cir. 11/6/13), 127 So.3d 50, 55 (citing *McDonald v. McDonald*, 08-1165 (La.App. 3 Cir. 3/4/09), 10 So.3d 780).

"A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive." La.Code Civ.P. art. 221.

In this case, the trial court found Sasol was in constructive contempt of the consent judgment between Sasol and the Meyers. Louisiana Code of Civil Procedure article 224(2) defines a constructive contempt of court, stating, "[a] constructive contempt of court is any contempt other than a direct one. Any of the following acts constitutes a constructive contempt of court: . . .(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court."

> Although a district court has discretion to determine whether to find a person guilty of constructive contempt of court, a finding that a person wilfully disobeyed a court order in violation of La.Code of Civil Proc. art. 224(2) must be based on a finding that the accused violated an order of the court "intentionally, knowingly, and purposefully, without justifiable excuse."

*Lang v. Asten, Inc.*, 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454 (citing *Brunet v. Magnolia Quarterboats, Inc.*, 97-187 (La.App. 5 Cir. 3/11/98), 711 So.2d 308,

4

*writ denied*, 98-990, 720 So.2d 343 (La. 5/29/98), and *Pittman Const. Co., Inc. v. Pittman*, 96-1079, 96-1498 (La.App. 4 Cir. 3/12/97), 691 So.2d 268, *writ denied*, 97-960 (La. 5/16/97), 693 So.2d 803).

Sasol argues that its actions were not willful and were justifiable because it had a reasonable belief that its actions were based on safety and security concerns in accord with an "emergency" exception under the language of the consent judgment. The pertinent "emergency" exception language Sasol relies upon is as follows:

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that Sasol shall not block, restrict, impede or reduce access at any of the existing ingress and egress points currently existing on the Meyers' Property (the existing ingress and egress points consist of the western gate and the northern gate that abuts Matheson Road) except in the case of a safety, health or security emergency, which impediments or restrictions shall be immediately removed upon cessation of the emergency;

The Meyers point out that Sasol's reliance on this language to justify violation of the consent judgment is not reasonable because it clearly does not apply to the situation before us. First, the Meyers assert that the language of the "emergency" exception is clear and unambiguous, and, as such, does not apply to Gate 5. The exception applies to "any of the existing ingress and egress points currently existing on the Meyers' Property (the existing ingress and egress points consist of the western gate and the northern gate that abuts Matheson Road)." Gate 5 is located on property owned by Sasol. Thus, the Meyers argue that the plain language of the "emergency" exception indicates that it does not apply to Gate 5.

Second, the Meyers directs the court's attention to the portion of the "emergency" exception wherein it states that the "impediments or restrictions (of using the servitude) shall be immediately removed upon cessation of the emergency." According to the Meyers, it is clear that Sasol's "emergency" is not of the temporary kind envisioned by the agreement. The Meyers' evidence this by

5

highlighting Sasol's November 7, 2018 letter to them wherein Sasol notified them that it would relocate the servitude to run through Gate 4 permanently.

After reviewing the record, we find that the location at issue in this case, Gate 5, i.e., the point of ingress and egress, did not "currently exist[] on the Meyers Property" when the consent judgment was signed, nor does Gate 5 exist on the Meyers Property now. The plain language within the four corners of the consent judgment are clear and unambiguous that the "emergency" exception applies to points on the Meyers' property, not Sasol's property. Further, the "emergency" Sasol felt justified its actions was not of a temporary nature as clearly contemplated by the "emergency" exception. Therefore, Sasol's assertion that it reasonably relied on this language of the "emergency" exception for justification of its actions is without merit.

We note that, in this assignment of error, Sasol relies heavily on the testimony of Scott Tyler, its senior manager of occupational safety and security, to assert that it had a legitimate belief switching the original location from Gate 5 was justified due to an "emergency." According to Tyler, continuing to allow the Meyers to use Gate 5 created a "security emergency," and he felt that Sasol genuinely believed it was justified in its actions. The evidence in the record is such that characterizing this situation as an "emergency" due to safety concerns is not reasonable. While Sasol deemed some health risk was present for the Meyers and their guests such that they should not use Gate 5, no such restrictions were placed on its employees or anyone else authorized to use Gate 5 under CFATS regulations. Therefore, regardless of how genuinely justified an employee of Sasol felt Sasol's actions were in this matter, the trial court found, as fact, that Sasol attempted to alter an agreement memorialized by a court order through self-help in unilaterally creating issues which it hoped would necessitate the agreement's alteration. Sasol did so for its sole benefit

6

so it can comply with regulations it knew existed prior to choosing to create the "security emergency" and knew existed prior to agreeing to the consent judgment with the Meyers. Further, rather than attempting to negotiate moving the servitude, Sasol chose actions to violate an order of the court and attempted to find any justification for choosing those actions.

As such, we find it clear that the trial court was within its discretion to find that Sasol "intentionally, knowingly, and purposefully, without justifiable excuse" violated the consent judgment between it and the Meyers. Further, we find no manifest error by the trial court in any of its factual findings related to Sasol's actions. Accordingly, this assignment of error lacks merit.

**ASSIGNMENTS OF ERROR NUMBER TWO:**

Sasol, in its second assignment of error, contends that the trial court manifestly erred in finding each instance of violating the consent judgment to be a separate and distinct act. We find this contention without merit.

"The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the court's order and its decision will only be reversed when the appellate court can discern an abuse of that discretion." *Howard v. Oden*, 44,191, p. 12 (La.App. 2 Cir. 2/25/09), 5 So.3d 989, 997, *writ denied*, 09-965 (La. 6/26/09, 11 So.3d 496 (citing *Stephens v. Stephens*, 30,498 (La.App. 2 Cir. 5/13/98), 714 So.2d 115).

Louisiana Revised Statutes 13:4611 states, in pertinent part, the following:

Except as otherwise provided for by law:

(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:

(a) For a direct contempt of court committed by an attorney at law, by a fine of not more than one hundred dollars, or by imprisonment for not more than twenty-four hours, or both; and, for any subsequent contempt

7

of the same court by the same offender, by a fine of not more than two hundred dollars, or by imprisonment for not more than ten days, or both;

(b) For disobeying or resisting a lawful restraining order, or preliminary or permanent injunction, by a fine of not more than one thousand dollars, or by imprisonment for not more than six months, or both.

(c) For a deliberate refusal to perform an act which is yet within the power of the offender to perform, by imprisonment until he performs the act; and

(d)(i) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.

(ii) In addition to or in lieu of the penalties provided by this Paragraph, the court may order that the person perform litter abatement work or community service in a court-approved program for each day he was to be imprisoned, provided that the total days of jail, litter abatement work, and community service do not exceed the maximum sentence provided by this Paragraph.

Sasol first contends that the maximum the trial court could fine it under La.R.S. 13:4611 for its alleged act of contempt is $1,000.00 or $500.00 depending on which part of La.R.S. 13:4611 the trial court found Sasol violated. We disagree.

In *Gautreaux v. Gautreaux*, 220 La. 564, 57 So.2d 188 (1952), the supreme court found that a single contemptuous act of a continuing nature occurring on a single occasion during a single proceeding was only punishable once under La.R.S. 13:4611. As such, the *Gautreaux* court found the attorney, who expressed contempt for the court more than one time at that single hearing, could only be held in contempt, and punished as such, once.

However, the *Gautreaux* court, in a per curium opinion after rehearing, went on to clarify that their ruling was "limited to the particular circumstances involved as, indeed, each case must stand or fall in determining whether one or more separate acts of contempt have been committed," and then held that the criterion for ascertaining whether a single or multiple acts of contempt transpired is "whether the

8

subsequent contemptuous act is so interwoven with the previous conduct that it is inseparable therefrom." *Gautreaux*, 57 So.2d at 193. Accordingly, it is clear that La.R.S. 13:4611 does not prohibit separate fines for separate acts of contempt or set a statutory maximum fine of $1,000.00 as Sasol contends. See *City of Kenner v. Jumonville*, 97-602 (La.App. 5 Cir. 8/27/97), 701 So.2d 233, *writ denied*, 97-2890 (La. 1/30/98), 709 So.2d 718, *cert. denied*, 524 U.S. 953, 118 S.Ct. 2371 (1998), and *Sonnier v. Town of Vinton*, 99-927 (La.App. 3 Cir. 12/22/99), 759 So.2d 818.

Next, Sasol argues that even if the trial court could impose a fine greater than $1,000.00, it should not have done so in this matter. The basis of Sasol's argument is that each of its 293 violations of the consent judgment flowed from its single decision to reroute access to the Meyers' property from Gate 5.

Sasol first supports its argument by pointing out that there is nothing in the consent judgment calling for a specific fine and nothing that contemplates imposition of separate fines. This argument is irrelevant.

Sasol proposes this argument to distinguish this case from those of *Jumonville*, 701 So.2d 223, and *Sonnier*, 759 So.2d 818 where fines of more than $1,000.00 were affirmed when the fines were imposed on a per day basis. While it is true that the relevant provision in the *Jumonville* case specifically called for a per day fine, nothing in the *Sonnier* case detailing the imposition of a fine was present.

Here, the consent judgment is silent regarding fines and merely states that "[i]n all cases, the determination of contempt shall lie with the Court." Accordingly, we are to review whether the trial court adhered to the directive from *Gautreaux* to exercise its vast discretion "in determining whether one or more separate acts of contempt have been committed" based on whether the multitude of contemptuous acts "were so interwoven with the previous conduct that it is inseparable therefrom." *Gautreaux*, 57 So.2d at 193. As such, Sasol's implication from its argument that the

trial court in this matter somehow needed express authorization to impose a fine greater than $1000.00 against Sasol is not correct.

Next Sasol attempts to differentiate this situation from jurisprudence allowing for fines greater than $1,000.00 under La.R.S. 13:4611 by pointing out that the number of violations was fully within the Meyers' control. We find this attempted distinction by Sasol meritless because Sasol was in a position to prevent any and all violations simply by heeding the consent judgment and allowing the Meyers to continue to use Gate 5.

Finally, Sasol asserts fairness issues with the fine for each instance of its violation arguing that the Meyers knew they were going to be denied use of Gate 5 but continued to try "simply for the purpose of maximizing the potential fines against Sasol." Sasol then emphasizes language from another case, *Reeves v. Thompson*, 95-321, pp. 15-16 (La.App. 4 Cir. 12/11/96), 685 So.2d 575, 582 where the fourth circuit stated that fining the violator of a court order under La.R.S. 13:4611 a large sum would encourage "a plaintiff to refrain from filing [a contempt rule] until the violations added up to an astronomical amount." In looking at *Reeves*, this language cited by Sasol echoed sentiments expressed by our supreme court in *State v. King*, 17 So. 288 (La.1895). We note that the *Reeves* court specifically stated that *King* was "the only authority cited by either party" and that it was "unaware of any other cases which address this issue." *Reeves*, 685 So.2d at 582. Since *Reeves*, both the fifth circuit and this very court decided *Jumonville*, 701 So.2d 223, and *Sonnier*, 759 So.2d 818, respectively. It is clear to this court that the fears expressed by the *Reeves* court of a plaintiff refraining from filing to gain an advantage are held in check by a trial court exercising its discretion and heeding our supreme court's directive in *Gautreaux* to look at the particular circumstances of each case.

Therefore, in reviewing the record, we find no evidence that the Meyers took advantage of Sasol's multiple violations by holding back from filing so the fines could reach an amount deemed astronomical. Contrarily, the Meyers filed a rule for contempt on November 9, 2018, two days after being notified of Sasol's intent to discontinue allowing the Meyers to use Gate 5 and before any violations took place. The matter was set expeditiously for a hearing on November 16, 2018. The day before the hearing was scheduled, Sasol removed the case to federal court. The case was then remanded back to state court. Therefore, the availability of time for multiple violations to transpire is the result of Sasol's actions, rather than a plot by the Meyers to maximize fines. Second, given the nature of contempt proceedings, the Meyers gain no economic benefit from refraining to file the rule. Instead, it is Sasol that benefits from impeding judicial efficiency by prolonging the matter, and thereafter seeking to face a single $500.00 to $1,000.00 fine for its "single act."

The circumstances of this case make it clear that the potential for abuse is much greater should Sasol's multiple violations be subject to a single fine. This result in these circumstance would eviscerate the power of the court to compel compliance with its order by encouraging Sasol to continue violating the consent judgment on multiple occasions since it is armed with the knowledge that it merely faces a single fine following another prolonged litigation. Such is not parallel with the purpose of contempt proceedings nor does it promote faith in the authority or dignity of the court.

Accordingly, after a thorough review of the record, we find no indication that the trial court abused its vast discretion in this matter. This assignment of error lacks merit.

**ANCILLARY MATTER:**

In brief, the Meyers request additional attorney's fees for work done on appeal. The resolution of this matter warrants our granting of this request.

Whenever a request for attorney's fees is granted by a court below, it is appropriate to award additional fees for work done at the current level to keep the two judgments consistent. *Wilczewski v. Brookshire Grocery Store*, 08-718 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.

A review of record and work performed on appeal suggests that $10,000.00 in attorney's fees is reasonable. Accordingly, we grant this request and award the Meyers $10,000.00 in additional attorney's fees for work done on this appeal.

**CONCLUSION:**

Sasol Chemicals USA, LLC raises two assignments of error. We find no merit to either of those assignments. Further, Vernon Christopher Meyer and Carla Michelle Meyer request attorney's fees for work done on appeal. We grant this request and award them $10,000.00 in additional attorney's fees.

**AFFIRMED.**