711 So.2d 308 (1998)
Charles J. BRUNET
v.
MAGNOLIA QUARTERBOATS, INC., et al.
No. 97-CA-187.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1998.
*309 Overton T. Harrington, Jr., Gretna, Joseph L. Gimbrone, San Diego, CA, for Appellant Polaris Insurance Company, Ltd.
Richard A. Weigand, T.A., Weigand, Levenson & Costa, New Orleans, for Appellee Charles Brunet.
Carl J. Hebert, T.A., Evans & Company, New Orleans, for Magnolia Holdings, Inc., Maintenance Dredging, Inc.
Before GAUDIN, CANNELLA and DALEY, JJ.
CANNELLA, Judge.
Defendant, Polaris Insurance Company, Ltd. (Polaris), appeals from several trial court orders[1] fining it for contempt of court, *310 failure to comply with discovery and failure to post a bond as an unauthorized insurer. We reverse in part and affirm in part.
On May 12, 1995, plaintiff filed a suit under the Jones Act[2], general maritime law and for maintenance and cure, for injuries he sustained to his back in an accident onboard the Q/B MAG II on October 21, 1994.[3] He initially filed suit against defendants, Magnolia Quarterboats, Inc. (Magnolia) and Maintenance Dredging, Inc. (Maintenance).
Maintenance filed a third-party suit against Polaris on September 20, 1995, asserting that Polaris provided insurance coverage for the claim and owed it a defense and indemnity. Polaris was alleged to be incorporated and/or registered in the British Virgin Islands (BVI), with their main office in San Juan, Costa Rica. On October 2, 1995, plaintiff added as defendants, Magnolia Holdings, Inc., as the owner of the vessel, and Polaris, as its' insurer. In its' answer, Polaris denied that it provided insurance coverage to Magnolia Holdings, Inc. or Maintenance or Magnolia (the three companies are hereinafter referred to as M/H).[4]
In August of 1996, plaintiff and M/H filed a series of motions against Polaris for discovery, for sanctions for failing to comply with discovery and for the posting of a bond as an unauthorized insurer, pursuant to La. R.S. 22:1255. The latter was based on discovery that Polaris' name had been struck from the rolls of insurers in the BVI and that it was not authorized to do business in Louisiana or any other state. The trial judge issued orders for discovery relative to motions filed by either plaintiff or M/H or by those parties jointly. The discovery was aimed at obtaining the correct insurance policies and the language in the policies on which Polaris was basing its denial of coverage for this accident. Movers tried to obtain certified copies of the policies, applications and a quote letter provided to M/H by Polaris. They also attempted to obtain documents related to Polaris' status as an unauthorized insurer. However, Polaris' responses were unsatisfactory to the movers.
In August and September of 1996, plaintiff and M/H filed motions to compel discovery and motions for sanctions and to strike Polaris' answers for failure to comply with discovery orders. A hearing was set for October 4, 1996. Trial had been set for October 8, 1996.
On August 5, 1996 and in September of 1996, the trial judge issued orders relating to discovery requests by plaintiff and M/H, individually filed in April and September of 1996.
On October 2 and 3, 1996, plaintiff and M/H filed additional motions to strike Polaris' answers, two motions to strike the pleadings based on R.S. 22:1255, a motion to file a supplemental memo on the issues raised in plaintiff's motion to compel, and another motion to compel and for sanctions by M/H for failure to comply with the discovery order. On October 4, 1996, plaintiff filed a motion to file a supplemental memorandum regarding the bond issue. These matters were set for hearing on October 4, 1996, the date previously set for hearing on the earlier filed motions.
On October 4, 1996 the hearing was held. On October 9, 1996, the trial judge rendered a judgment. The judgment granted plaintiff's and M/H's motions to compel discovery of the quote letter, applications, correct policies and any documents on which Polaris based its denial of coverage. She "held in abeyance" a ruling on the motions to strike *311 the pleadings urged on the basis of La. R.S. 22:1255. Trial on the merits was reset for October 29, 1996.
On October 15, 1996 and October 17, 1996, plaintiff and M/H filed motions for sanctions and for adverse presumptions against Polaris for their alleged failure to respond properly to the orders of October 9, 1996. They also filed a joint motion to file a supplemental memorandum and for a reconsideration of the Motion To Strike Pleadings Filed By Polaris. R.S. 22:1255. An expedited hearing was set for October 25, 1996.
On October 21, 1996, plaintiff and M/H filed a motion to order a representative of Polaris to appear at the hearing set for October 25, 1996 and to provide documents related to their status as an alleged unauthorized insurer. That motion was granted on the same day (four days before the hearing.) On the next day, Polaris responded with an opposition to the motions to strike and for the adverse presumptions.[5]
On October 24, 1996, plaintiff and M/H filed a motion to file a joint supplemental memorandum in support of the motion to strike the pleadings based on R.S. 22:1255.
On October 25, 1996, the hearing convened. However, Polaris' representative failed to appear or produce any documents relative to the issue of it's status as an unauthorized insurer. Counsel for Polaris participated in the hearing by telephone. In open court and in the judgment dated October 28,1996, the trial judge granted the motions, applied the adverse presumptions and assessed a $1,500 fine against Polaris for its failure to appear as ordered with the documents requested.
The judgment applied the adverse presumptions, as follows, stating:
1. That the failure of Polaris to
"... produce the insurance quote of October 6, 1993 in contravention of discovery requests and Court Order gives rise to an adverse presumption that the October 6, 1993 letter would have contained information adverse to the position of Polaris Insurance Company, Ltd. that it did not quote for crew coverage ..."
2. That
"... the failure of Polaris Insurance Company, Ltd. to comply with the Court Order regarding the production and identification of the applications for insurance ... precludes Polaris ... from introducing into evidence any information regarding applications for insurance other than those which Polaris ... had earlier produced, and further gives rise to an adverse presumption against Polaris ... that the applications which were produced indicate that crew coverage was requested by Magnolia Holdings, Inc. and Maintenance Dredging, Inc."
The trial judge next granted the Joint Motion to File Supplemental Memorandum and For Reconsideration Of Motion To Strike Pleadings Filed By Polaris Insurance Company, Ltd. for Polaris' failure to comply with La. R.S. 22:1255 and ordered Polaris to post a bond in the amount of $550,000 by noon on Monday, October 28, 1996. The judgment states that, if the bond is not posted timely, the pleadings filed by Polaris "shall be struck from the record and the Clerk of Court shall enter a Preliminary Default against Polaris Insurance Company, Ltd."
The trial judge further found Polaris to be in contempt of court for failing to appear and produce documents at the hearing, as it was ordered to do in the judgment of October 21, 1996 and by virtue of the subpoena duces tecum issued October 21, 1996. For this violation, the trial judge ordered Polaris to pay a fine of $1,500 to plaintiff and M/H. She further ordered Polaris to pay the fine and produce the subpoenaed documents at the office of plaintiff's counsel by Monday, October 28, 1996 at 12:00 noon, CST. Thus, Polaris was required to pay the $1,500 fine, to post bond and again to produce the documents by noon of October 28, 1996. Polaris did not ask for an extension, a stay order or any other relief.
*312 On October 29, 1996, pursuant to a written motion filed in open court by plaintiff and M/H, the trial judge entered a preliminary default against Polaris on the issue of coverage for Polaris' failure to post the bond (in accordance with the provisions of the October 28, 1996 judgment). Polaris paid the $1,500 fine to the trial court.
Also, on October 29, 1996, a hearing was held on the following various outstanding motions. However, there is no motion to set a hearing on this date, or order setting a hearing on this date in the record. Both of Polaris' attorneys were present because this was the date set for trial. The trial was apparently continued again, this time, without date.
Following this hearing, the trial judge rendered a decision in open court, ordering Polaris to perform certain acts by November 4, 1996. However, the written judgment was not signed until November 4, 1996. The judgment:
1. Struck all of Polaris' pleadings in the case, pursuant to the Joint Motion To Strike, for its failure to comply with La. R.S. 22:1255 and for failing to post the bond as ordered..
2. Awarded $2,500 as sanctions against Polaris, pursuant to a joint oral motion based on Polaris' failure to pay the fine of $1,500 and failure to produce the documents, as ordered in the October 28, 1996 judgment.
3. Further states that
"... if Polaris continues in contempt in any respect by continuing to fail to pay all fines now due or by continuing to fail to produce the documents Ordered by 5:00 p.m., CST, Thursday, October 31, 1996, they are additionally fined $3,500; if Polaris continues in contempt in any respect of this Court's orders by 9:00 a.m. CST on Monday, November 4, 1996, Polaris shall be fined an additional $5,000."
4. Ordered all of the contempt fines to be paid into the court registry for the benefit of plaintiff and M/H.
On November 6, 1996, plaintiff and M/H filed a joint petition for a Judgment Debtor Rule against Polaris for the amount of all of the monetary sanctions and for the production of certain documents pertaining to Polaris' ability to pay the fines. That hearing was set for November 15, 1996.
On November 15, 1996 at 8:42 a.m., Polaris filed a Motion for Devolutive Appeal. (See footnote 1). The motion for appeal was granted on the same date.
Also on November 15, 1996, the judgment debtor rule was heard. However, again, no one from Polaris appeared, other than counsel, and no documents were produced.
On January 6, 1997, the trial judge found Polaris in contempt of court for failing to comply with the Judgment Debtor Rule. The trial judge fined them $100 per day, continuing until they paid all fines and "Polaris brings itself into compliance with this Court's orders".
In May of 1997, this court dismissed the appeal because the matters were interlocutory in nature and not appealable. Subsequently, the Louisiana Supreme Court remanded the case to this court for consideration of the merits under our supervisory jurisdiction. The case was then docketed and set for argument on the regular appellate docket.
The issues on appeal are the validity of judgments ordering payment of contempt fines, the striking of the pleadings and the adverse presumptions.
A) CONTEMPT FINESJudgments of October 28, 1996 and November 4, 1996.
B) DEBTOR JUDGMENT RULEJudgment of January 6, 1997.
The judgments rendered on October 28, 1996, November 4, 1996 and January 6, 1997 ordering the payment of contempt fines, are invalid.
Contempt proceedings in civil cases are regulated by La. C.C.P. art. 221-227 and La. R.S.13:4611. La. C.C.P. art. 224 provides in pertinent part:
A constructive contempt of court is any contempt other than a direct one.
Any of the following acts constitute a constructive contempt of court:

*313 (2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
La. C.C.P. art. 227 provides:
A person may not be adjudged guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law.
The punishment which a court may impose upon a person adjudged in contempt of court is provided in La. R.S. 13:4611, which provides in pertinent part:
Except as otherwise provided by law:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of contempt of court therein, as follows ...
(d) For any other contempt of court, including disobeying an order for the payment of child support or alimony or an order for the right of visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both. [Emphasis added.]
To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. In making this determination, the trial court is vested with great discretion. City of Kenner v. Jan P. Jumonville, Placide Jumonville, p. 5-6, 97-125 (La.App. 5th Cir. 8/27/97), 701 So.2d 223; Reeves v. Thompson, 95-0321 (La.App. 4th Cir. 12/11/96), 685 So.2d 575, 579. Proceedings for contempt must be strictly construed, and the law does not favor extending their scope. Estate of Graham v. Levy, 93-0636, 93-0134 (La.App. 1st Cir. 4/8/94), 636 So.2d 287, 290, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167.
Constructive contempt may be found on a rule to show cause, with defendant being allowed at least forty-eight hours, from the date he or she receives notice, to prepare a defense. La. C.C.P. art. 225. The motion for the rule may issue on the court's own motion or on motion of a party and shall state the facts alleged to constitute the contempt. Id. The due process limitations on summary contempt procedures were discussed in State v. Watson, 465 So.2d 685, 687 (La.1985), the court stated:

In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) discusses the due process limitations on summary contempt procedures:
Except for a narrowly limited category of contempts, due process of law as explained in the Cooke Case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, and where immediate punishment is essential to prevent `demoralization of the court's authority' before the public. If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires ... that the accused be accorded notice and a fair hearing as above set out. 333 U.S. at 275, 276, 68 S.Ct. at 508, 509, 92 L.Ed. at 695.
Pittman Const. Co., Inc. v. Pittman, 96-1079 (La.App. 4th Cir. 3/12/97), 691 So.2d 268, 273.
Furthermore, a contempt proceeding is designed for the vindication of the dignity of the court rather than for the benefit of a litigant. Nungesser v. Nungesser, 558 So.2d 695, 701 (La.App. 1st Cir.1990). Thus, the court cannot order a fine or penalty to be paid to a litigant because such payment does not vindicate the court. City of Kenner v. Jan P. Jumonville, Placide Jumonville, p. 8. The fine must be made payable to the court itself. Id.
*314 First, the contempt order in the judgment of October 28, 1996 relates to the Joint Motion for Representative to Appear and for production of documents related to Polaris' defense that it is exempt under R.S. 22:1255 from posting a bond. The motion was timely filed and served on October 21, 1996 for the hearing on October 25, 1996. However, Polaris neither appeared at the October 25, 1996 hearing nor produced the documents showing their status as an authorized or registered insurer in the BVI. Because they failed to obey that order, the trial judge found them in contempt of court and ordered them to pay a fine of $1,500. However, no rule to show cause was filed as to why Polaris should not be found in contempt of court, much less giving them 48 hour notice of the hearing. Furthermore, we note that the fine was excessive under R.S. 13:4611 and was awarded to plaintiff and M/H, rather than the court. Since this contempt finding was based on a judgment which failed to follow the rules of court for notice and hearing in violation of Polaris' due process rights, it is invalid. Thus, we reverse the October 28, 1996 judgment, insofar as it holds Polaris in contempt of court for failing to appear at the October 25, 1996 hearing, and we vacate the $1,500 fine.
Second, the November 4, 1996 judgment is also invalid for the same reasons. That judgment ordered escalating fines based on a hearing held October 29, 1996. However, there was neither a rule to show cause filed stating the basis for the contempt, (for failure to pay the fine, post the bond, or produce the documents as ordered in the judgment of October 28, 1996), nor did a notice issue to Polaris that there would be a contempt hearing on that date. In addition, the fines exceeded the permissible $500 maximum under R.S. 13:4611 and were erroneously awarded to the litigants. We find a further serious deficiency in the judgment in that it ordered Polaris to perform certain acts on October 31, 1996 and November 4, 1996, which was before the judgment was actually rendered on November 4, 1996. Because due process was not accorded Polaris in the matter of these contempt fines, the judgment assessing them is also reversed and the fines set aside.
In her November 4, 1996 judgment, the trial judge struck Polaris' pleadings because it failed to post the bond on October 28, 1996. This was neither a contempt nor sanctions ruling. Sanctions relate to discovery and contempt remedies are either fines or incarceration. Once the trial judge determined that Polaris was not exempt from posting the bond, she was mandated by R.S. 22:1255 to strike Polaris' pleadings for failing to post bond. Thus, no notice or hearing was required on this issue.
In reference to the judgment debtor rule, Polaris was obligated to attend and comply with the rule's request, whether or not it agreed.[6] Nonetheless, the subsequent judgment on January 6, 1996, awarding the parties contempt fines for failing to appear at the judgment debtor rule is also invalid, because it was rendered without compliance with the timely notice and hearing requirements of the contempt articles, La. C.C.P. arts. 221-227. Therefore, the judgment of January 6, 1997 is also reversed and the fines vacated.
C) APPLICABILITY OF R.S. 22:1255: Judgment of November 4, 1996.
Polaris argues that the trial judge erred in striking its pleadings because it is exempt from the bond requirement. Polaris asserts that it issued marine protection and indemnity policies, which are excluded from the provisions of R.S. 22:1249 et seq., regulating unauthorized insurers. It cites R.S. 22:1249 B(7) and Marine Marketing Services, Inc. v. Louisiana Department of Insurance, 95-1879 (La.App. 1st Cir. 5/10/96), 673 So.2d 335.
In Marine Marketing Services, Inc., the Commissioner of Insurance attempted to apply the unauthorized insurer provisions to a broker who had sold insurance policies covering recreational marine vessels. The Commissioner claimed that the sale of policies on recreational vessels was not included in the exemption under R.S. 22:1249 B(7). However, *315 the court of appeal held that the sale of protection and indemnity insurance on recreational vessels fell within the marine exception to the statutory definition of transacting business of insurance by an unauthorized insurer in R.S. 22:1249 B(7). This case is inapplicable. Here, the issue is whether the marine insurance exception also acts to exempt the marine insurer from posting a bond or obtaining a certificate of authority before it can file pleadings in defense of a lawsuit.
Part XXVII, of the Louisiana Insurance Code regulates unauthorized insurers doing business in Louisiana. La. R.S. 22:1249, et seq. R.S. 22:1249 provides in part:
§ 1249. Transacting a business of insurance by unauthorized insurer defined
A. Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer is defined to be transacting an insurance business in this state ...
B. This Section shall not apply to ...
(7) Insurance on vessels, crafts, hulls, cargoes, marine builders risks, marine protection and indemnity or other risk including strikes and war risks commonly insured under ocean or wet marine forms of policy.
Thus, an exclusion is made for insurers placing and delivering marine protection and indemnity insurance and hull insurance in the definition of "transacting an insurance business".
La. R.S. 22:1255 provides:
§ 1255. Requirements to be met before using courts
A. Before any unauthorized insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, such unauthorized insurer shall either (1) file with the clerk of the court in which such action, suit or proceeding is pending a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in such action; or (2) procure a certificate of authority to transact the business of insurance in this state ...[7]
La. R.S. 22:1254, the provision immediately before R.S. 22:1255 states:
§ 1254. Use of courts; prohibited to unauthorized insurer
No unauthorized insurer shall institute or file, or cause to be instituted or filed, any suit, action or proceeding in this state to enforce any right, claim or demand arising out of the transaction of business in this state until such insurer shall have obtained a certificate of authority to transact insurance business in this state. Nothing in this Section shall be construed to require an unauthorized insurer to obtain a certificate of authority before instituting or filing or causing to be instituted or filed any suit, action or proceeding either in connection with any of its investments in this state or in connection with any contract issued by it at a time when it was authorized to do business in the state where such contract was issued.
R.S. 22:1254 specifically says that "No unauthorized insurer shall institute or file, or cause to be instituted or filed, any suit, action or proceeding in this state to enforce any right, claim or demand arising out of the transaction of business in this state ..." Thus, when the non-exempt unauthorized insurer seeks redress from Louisiana courts for a claim arising out of its transaction of business, the non-exempt unauthorized insurer has no choice. It must obtain a certificate *316 of authority. Presumably, the exempt unauthorized insurer under La. R.S. 22:1249 B(7), would not have to do anything in order to pursue a claim in Louisiana courts. Use of the judicial system to address complaints, then, is reserved for those unauthorized insurers that are willing to become authorized insurers in Louisiana, or for specifically exempt insurers.
R.S. 22:1255, on the other hand, states "Before any unauthorized insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, such unauthorized insurer shall..." Thus, when any unauthorized insurer is a defendant, it has to file a bond, or it can choose to become an authorized insurer. This is to insure that the injured party will be able to collect payment of a judgment against the unauthorized insurer. Otherwise, the injured party will have no financial recourse. We find that this includes maritime insurers because, whereas the state of Louisiana may not want to "regulate" marine insurance for various reasons, such as the international scope of maritime activities, this provision does not "regulate" maritime insurance in regard to the transaction of marine insurance business.[8] Instead, like R.S. 22:1254, it regulates access to the courts. When the marine insurer uses the court system as a plaintiff, the state has no strong policy reason for overriding its exemption and requiring the marine insurer to become authorized. Thus, it may pursue a lawsuit without complying with La. R.S. 22:1254. However, a different policy arises when the insurer is a defendant. As a defendant, the insurer must be accountable in the event of a judgment against it. R.S. 22:1249 B(7) only exempts it from regulation of its activities while "transacting the business of insurance" in Louisiana. It does not exempt it from being a responsible judgment debtor. If any unauthorized insurer, including maritime, does not want to show that it intends to act responsibly in the event of a judgment against it, by either posting a bond or becoming authorized by the state, it should not be permitted to file pleadings and present a defense to a lawsuit in this state. The public policy of the state of Louisiana requires even a maritime insurer to be accountable for its debts in Louisiana.[9] Since R.S. 22:1255 does not regulate the transacting of maritime business, we find that the trial judge did not err in finding that Polaris is not exempt from the requirements in R.S. 22:1255 and ordering it to post a bond.
We point out that, even if this court were to find that Polaris is exempt from the bond requirement, they failed to seek relief from the order. At the time the pleadings were struck, the order was in effect and Polaris was bound to obey the order or suffer the consequences. Polaris' remedy was to immediately either post the bond or ask for a stay order and then seek supervisory relief in the appellate court. See: State in Interest of J.B., 499 So.2d 611, 613 (La.App. 5th Cir. 1986). Therefore, we find that the trial *317 judge did not err by striking Polaris' pleadings in the November 4, 1996 judgment. This part of the judgment is affirmed.
D) SERVICE OF PLEADINGS: Hearings of October 4,1996, October 25, 1996 and October 29,1996.
Polaris next asserts that the order to post security was decided on the basis of a memorandum that was improperly served and exhibits that were not served on counsel. Polaris argues that the supplement and exhibits were required to be served 72 hours before the hearing and that service by fax was not permitted in 1996, under the Code of Civil Procedure. It also argues that the trial judge erred in granting the renewed motion because there was no new evidence in the matter.
First, the matter of the bond requirement was not a new issue or a renewal of one that had already been decided, but one that had been pending since October 9, 1996. In the judgment of October 9, 1996, the trial judge held a decision on this issue in abeyance. Thus, the trial judge did not err in permitting plaintiff and M/H to re-urge the motion later.
The law applicable in 1996, provided, as it still does, that it is unnecessary to serve on the adverse party a copy of a written document that is an exhibit to a pleading, unless the party filing the pleading prays for service. La. C.C.P. art. 1311. Thus, service of the exhibits was not required by Louisiana law. However, service of a pleading and exhibits is required under the 24th Judicial District Court rules, no sooner than 72 hours before the hearing, if another time is not set by law or the court. Rules of the 24th Judicial District Court, Civil Rule XVI and XVII. It is unclear whether Polaris is complaining about the hearing on October 4, 1996 or October 25, 1996. However, we have reviewed all of the pleadings for all of the hearings in this case.
Service was timely on all pleadings for the October 4, 1996 hearing (judgment on October 9, 1996), other than those filed October 3 and 4, 1996: the first Motion to Strike based on R.S. 22:1255 by plaintiff, a similar one filed by M/H, a supplemental memo on the production issue by plaintiff, and a Motion for Sanctions relative to the production of documents issue.[10]
*318 Although the pleadings filed October 3rd and 4th, 1996 (for the hearing on October 4, 1996) were not filed in compliance with the rules of the 24th Judicial District Court, we find that Polaris was not prejudiced. In her October 9, 1996 judgment, the trial judge simply ordered Polaris to comply with previous discovery orders and did not sanction them. Further, although the bond issue was raised for the first time one day before the hearing, the trial judge did not rule on this issue and held it in abeyance. Thus, we find no reason to reverse this judgment.
The pleadings filed in conjunction with the hearing on October 25, 1996 were timely, except for the Joint Supplemental Memorandum in Support of the Motion to Strike, asserting that Polaris is a "bogus" insurer. This was filed and served on October 24, 1996, one day before the hearing. Thus, it was not served 72 hours before the hearing and service of that supplemental memorandum was deficient under the local rules. However, our review of the record reflects that the trial judge did not sign the order permitting this supplement to be filed. In addition, we find that the motion which she granted was the Joint Motion To File Supplemental Memorandum and for Reconsideration of Motion to Strike (based on R.S. 22:1255), that was filed October 17, 1996. That motion was filed timely. Thus, she did not err in considering the issue and ordering Polaris to file a bond pursuant to La. R.S. 22:1255.
E) ADVERSE PRESUMPTIONS: Judgment of October 28, 1996.
The next issue is whether the trial judge erred in ordering that the adverse presumptions were appropriate because of Polaris' failure to comply with the production of documents.
Polaris argues that they searched their files and were unable to locate the requested "quote" letter. Further, they argue that the adverse presumptions are irrelevant and without factual basis because the policies are the contracts, not the quote letter or applications. Polaris argues that the policy itself is the evidence of insurance and that M/H and plaintiff have been in possession of the policy at all times.[11]
La. C.C.P. 1471 provides:
Art. 1471. Failure to comply with order compelling discovery; sanctions
If a party or an officer, director, or managing agent of a party or a person designated under Articles 1442 or 1448 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1469 or Article 1464, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

*319 (1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.
(5) Where a party has failed to comply with an order under Article 1464, requiring him to produce another for examination, such orders as are listed in Paragraphs (1), (2), and (3) of this Article, unless the party failing to comply shows that he is unable to produce such person for examination.
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
Service of the pleadings relative to these particular issues giving rise to the adverse presumptions was timely.[12] The trial judge ordered the documents produced and Polaris defied the order. Whether or not Polaris agrees with the importance of the requested documents, they were requested in pursuit of discovery and ordered to be produced. Under C.C.P. art. 1471, the trial judge was authorized to order that the matters in the documents are to be established for failing to comply with discovery. Although Polaris contended that the quote letter could not be found after a diligent search, the trial judge apparently did not believe them. Further, Polaris does not explain why the applications were not produced. In light of the often unexplained refusal of Polaris to comply with the orders of the court in this case, we find that the trial judge did not abuse her discretion in applying the adverse presumptions.
Accordingly, the judgment of October 9, 1996 is affirmed.
The judgment of October 28, 1996 is affirmed in part and reversed in part. It is reversed insofar as it holds Polaris in contempt for failing to appear at the hearing on October 25, 1996. Therefore, the fine assessed against Polaris of $1,500 for that contempt is vacated. The judgment of October 28, 1996, effecting the adverse presumptions against Polaris, is affirmed.
The judgment of November 4, 1996 is affirmed in part and reversed in part. It is affirmed insofar as it strikes Polaris' pleadings for failure to post a bond in compliance with R.S. 22:1255. It is reversed as to the contempt findings and the fines therein are hereby vacated. The judgment of January 6, 1997 is reversed in its entirety.
Costs in this matter are to be paid by Polaris.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] In Polaris' Motion For Devolutive Appeal, they appeal

"... from all previous Orders of this Court... but particularly including, without limitation the final judgment entered on October 29, 1996 by this Court, striking all pleadings of Polaris Insurance Company. Ltd. for failure to post a bond; the order of this Court of October 29, 1996 entering a preliminary default; the Order of October 28, 1996 entered at 8:25 AM ordering that a Bond be posted by 12 Noon on October 28 or a preliminary default would be entered; the Order and Judgment issued the afternoon of Friday, October 25, 1996 ordering Polaris to obtain and post a bond by 12:00 noon, October 28, 1996, and all prior Orders including the Order striking the plea of limitation of liability and all other prior Orders and Judgments" (emphasis added).
Because of the imprecise language of the Motion For Devolutive Appeal, in brief the Assignments of Error, their argument and attached copy of only one judgment, this court was placed in the difficult position of determining which judgments and orders Polaris was appealing. The following is a list of the eight judgments and orders which this court considers appealed from herein:
1. Judgment on Motion To Compel Discovery dated August 5, 1996, after hearing on August 2, 1996.
2. Judgment and Reasons dated October 9, 1996, after hearing on October 4, 1996.
3. Order dated October 21, 1996.
4. Judgment dated October 28, 1996, after hearing on October 25, 1996.
5. Order of Preliminary Default dated October 29, 1996.
6. Judgment and Reasons dated October 29, 1996, after hearing on same day.
7. Judgment dated November 4, 1996, after hearing on October 29, 1996.
8. Judgment dated January 6, 1996 after hearing on November 15, 1996.
[2] 28 U.S.C. § 1333.
[3] In March of 1996, the maintenance and cure claim was severed and set for expedited hearing. Plaintiff settled the maintenance and cure demand in July of 1996.
[4] For the purposes of this appeal, plaintiff and defendants, M/H, are aligned..
[5] There was another document opposing a motion filed by plaintiff and M/H to strike Polaris' amended answer that had asserted the defense that the structure was not a vessel. That issue is not before us.
[6] Prior to the rule being heard, Polaris filed its' Devolutive Motion for Appeal of all of the judgments. Nonetheless, this judgment is before us under our supervisory jurisdiction.
[7] The remainder states:

B. The court in any action, suit or proceeding in which service is made in the manner provided in Sub-sections B or C of R.S. 22:1253 may order such postponement as may be necessary to afford the defendant reasonable opportunity to comply with the provisions of Sub-section A of this Section and to defend such action.
C. Nothing in Sub-section A of this Section is to be construed to prevent an unauthorized insurer from filing a motion to quash a writ or to set aside service thereof made in the manner provided in Sub-sections B or C of R.S. 22:1253 on the ground either (1) that no policy or contract of insurance has been issued or delivered to a citizen or resident of this state or to a corporation authorized to do business therein, or (2) that such insurer has not been transacting business in this state, or (3) that the person on whom service was made pursuant to Sub-section C of R.S. 22:1253 was not doing any of the acts therein enumerated.
[8] R.S. 22:1249 A. defines what constitutes transacting insurance business in the state. (Marine insurance is exempted in B.)

R.S. 22:1250 authorizes the Commissioner of Insurance to sue unauthorized insurers violating the law or Code.
R.S. 22:1251 prohibits a domestic insurer from issuing policies in another state unless authorized, with some exceptions.
R.S. 22:1252 prohibits any person in this state from acting for an unauthorized insurer in any respects, with certain exceptions.
R.S.22:1253 designates the secretary of state as attorney for service of process for any "foreign" or "alien" unauthorized insurer who transacts business in this state without authority.
R.S. 22:1254 and 22:1255 (See above.)
R.S. 22:1256 declares policies void that are issued in violation of the provisions of the Codes, except by the insurer.
R.S. 22:1257-1270 regulate when and the manner in which brokers can place unauthorized insurance.
R.S. 22:1269 exempts, among others, ocean marine insurance from the
provisions of R.S. 22:1256-1270, except that the surplus line broker must comply with R.S.22:1262, even for placement of ocean marine insurance.
R.S. 22:1262 requires the insurer to deposit with the Commissions a guarantee or bond for the prompt payment of claims arising out of the insurance contract.
[9] We note that under R.S. 22:1262, an unauthorized insurer must provide a guarantee or bond when a surplus line broker is involved. This includes ocean marine insurance specifically for the payment of claims arising out of the insurance contract.
[10] Filed October 3, 1996-The first Motion to Strike based on R.S. 22:1255: Plaintiff filed this first motion to strike all of Polaris' pleadings under R.S. 22:1255, with two exhibits consisting of, Polaris' admission in a federal case that it is not authorized in Louisiana and its answers herein denying it does business in Louisiana.

Service October 2, 1996 was by facsimile and first class mail.
An expedited hearing was set for October 4, 1996. This was untimely served.
Filed October 3, 1996Supplemental Memo: Plaintiff filed this Supplemental Memo on the issue of sanctions for failing to comply with the production of documents relative to the policies and an endorsement, alleging different language in the various documents, making it impossible to know which was the correct policies and endorsement. Ten exhibits were attached: policies, requests for admissions, responses and exhibits to the pleadings, letters from Polaris to the agency that placed the insurance with different language cited for Endorsement 8 which was supposed to relate to crew coverage, a sample of endorsement 8 with different language, the policy sent to plaintiff, the affidavits and letters indicating the law of Costa Rica relative to certified copies and correspondence between the parties' attorneys.
Service October 2, 1996 was by facsimile and first class mail.
A hearing was set for October 4, 1996. This was untimely served.
This last memorandum related to the issues argued in the motion filed in August. The hearing on this was set for October 4, 1996.
Filed October 3, 1996Motion to Compel and for Sanctions: M/H filed this Motion for Sanctions for failing to comply with the court's previous order of discovery rendered in a pre-trial conference on September 26, 1996. There is no written judgment or order to that effect in the record. Exhibits consisted of the Motion to Compel of September 3, 1996, Request for Production of Documents of September 3, 1996, the responses and other pleadings, a letter to M/H's prior named business, River Products, listing coverage, and the policies.
Service October 3, 1996 was by facsimile and first class mail.
A hearing was set for October 4, 1996. This was untimely served.
Filed October 3, 1996Motion for Security and to Strike Polaris' pleadings based on R.S. 22:1255. M/H filed for the first time a Motion for Security and to Strike Polaris' pleadings based on R.S. 22:1255. Plaintiff's similar motion was also filed October 3, 1996. Exhibits: federal lawsuit admissions relative to not being authorized in Louisiana, letter from insurance commissioner's office relative to not being authorized in Louisiana.
Service October 3, 1996 was by facsimile and first class mail.
An expedited hearing was set for October 4, 1996. This was untimely served.
Polaris filed an opposition to the late motions, asserting that the bond issue should be denied for laches and because of the marine insurance exemption. They also responded that plaintiff was filing the motions and memorandums as a delaying tactic. They contend that plaintiff knew for many months that it was not authorized in Louisiana. Notably, it had admitted in pleadings in this case that it was not authorized to do business. The only comment it made, relative to the BVI registration, was that it was appealing the decision to strike its' name from the rolls. It has not denied that it is not on the rolls of the BVI. However, Polaris also argued in brief that they would be prejudiced if ordered to obtain the bond on the eve of trial. At that time, trial was still set for October 8,1996. Polaris also claimed that the documents requested had already been produced to the best of their ability.
Filed October 4, 1996 (morning of the hearings) Supplemental Memorandum: Plaintiff filed a supplemental memorandum in answer to Polaris' claims that they are exempted from the bond requirements.
Service October 4, 1996 was by mail. This was untimely served.
[11] Polaris also argues the merits of the coverage issue, asserting that the binders that were delivered are dated the same date as the policies, which reflects that no premium for workers' compensation and employer's liability was charged. A notation states that "All crew, employees, workers and causal laborers on board must be covered by workers compensation liability insurance to the minimum of the statutory rates for the state of location of the barges at all times." Polaris argues that this indicates that M/H was required to carry separate policies for employees. However, this is an issue for the merits and is not properly before us. The coverage issue has yet to be determined.
[12] The motion was filed October 15, 1996 and served October 11, 1996 by first class mail. The hearing was set and held on October 25, 1996.