802 So.2d 764 (2001)
Gerald ROCCAFORTE, Sally Roccaforte and Gerald "Joey" Roccaforte
v.
NINTENDO OF AMERICA, INC.
No. 01-CA-210.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 2001.
*765 Wendell H. Gauthier, Elizabeth C. Dougherty, Gauthier, Downing, LaBarre, Beiser & Dean, Richard C. Trahant, Metairie, LA, Counsel for Gerald Roccaforte, et al., Plaintiffs-Appellants.
Howard Daigle, Jr., James L. Bradford, III, Seale, Daigle & Ross, Covington, LA, Counsel for Nintendo of America, Inc., Defendant-Appellee.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This is a personal injury suit arising out of epileptic seizures triggered by the playing of video games. Plaintiffs are Gerald and Sally Roccaforte and their son, Gerald "Joey" Roccaforte. In 1994 Joey, an avid video-game player, suffered a cluster of violent seizures while playing video games. Plaintiffs filed suit under the Louisiana Products Liability Act against video game manufacturer Nintendo of America, Inc. and two video rental companies. The video rental companies settled prior to trial. *766 In January 2000, the case went to trial against the manufacturer.
After seven days of trial, the jury returned a verdict in favor of the defendant. They found that defendant did not provide an adequate warning to plaintiffs of the seizure risk, but that the products were not unreasonably dangerous in design and that the failure to provide adequate warning was not the proximate cause of Joey's injuries. Based on the verdict, the trial judge entered a judgment dismissing plaintiffs' claims. The trial court denied plaintiffs' motions for judgment notwithstanding the verdict and for new trial.
Plaintiffs appeal. They raise the following issues:
A. Whether the trial judge erred in denying the Roccafortes' Motion for New Trial based on Nintendo's withholding of evidence;
B. Whether the trial judge erred in failing to rule on the Roccafortes' Motion to Strike Nintendo's defenses;
C. Whether the trial judge erred in permitting changes to the jury verdict form after closing arguments;
D. Whether the jury erred in assessing no liability against Nintendo because it found that the video games were not a "proximate cause" of Joey's epilepsy, and whether the trial judge erred in denying plaintiffs' motion for JNOV/New Trial after the jury clearly and incorrectly assessed all fault to the plaintiffs;
E. Whether the trial judge should have assessed specific monetary amounts to the contempt and sanctions rulings and in what amount.

FACTS
On February 6, 1994 Joey Roccaforte, then 13 years old, experienced a cluster of violent seizures after playing a video game on his Super Nintendo Entertainment System earlier in the day. After emergency room treatment and hospitalization for testing, he was treated by a neurologist (Dr. Jonelle McAllister), who prescribed anti-seizure medication. Joey's parents had received information that the seizure might be related to video game play, but their concerns were negated by Dr. McAllister and other medical personnel. Dr. McAllister told Joey he could continue to play video games. After Joey was seizure-free for two years, Dr. McAllister released him from her care and from medication.
In June 1996 Joey underwent a second cluster of seizures. He began treatment by Dr. Terence D'Souza, who felt the seizures were related to video game play. Dr. D'Souza placed Joey on a different medication and advised him to stop playing video games. Joey was irregular in complying with his medication regimen and continued to play video games occasionally. He experienced a third cluster of seizures in March 1997 and another seizure in July 1997. After the fourth occasion, he began compliance with his medication and has suffered no more seizures.
Plaintiffs sought to prove that the seizures were induced by the Nintendo video games Joey played, that Nintendo failed to provide proper warnings regarding the possible danger of seizure in connection with video games, and that Nintendo could have designed games that would not induce seizures. Nintendo's defense was that plaintiff's seizures were unrelated to video game play, that it provided adequate warnings of triggering of seizure in seizure-disposed persons in the documentation that accompanies its entertainment systems, and that plaintiff and his parents failed to heed the warnings.
During trial, plaintiffs presented testimony of a human factors expert regarding *767 adequacy of warnings, Joey's pediatrician, two neurologists who had treated Joey, Joey's parents and Joey himself. Plaintiff also called defense witnesses to testify, specifically the Nintendo vice president who was its corporate representative at trial, Nintendo's expert neurologist, and Nintendo's human factors/warnings expert. During the trial the defense was forced to produce hundreds of pages of documents that the trial judge concluded should have been produced in response to pretrial discovery.
Plaintiffs contended that the content of the documents supported their posture in the case and sought a contempt ruling and sanctions against defendant. The trial judge granted the motion for contempt and imposed monetary sanctions, without specifying the amount. More severe sanctions were not imposed.
On appeal plaintiffs' primary contention is that their case was damaged by defendant's persistent failure to respond fully to discovery orders. The trial court twice found Nintendo in contempt and imposed sanctions for discovery abuses that occurred immediately prior to and during the trial.
The pre-trial contempt ruling arose when plaintiffs moved for a contempt ruling against Nintendo for intentionally violating a judgment of the court by altering documents that the court ordered Nintendo to produce without any provision for redaction. The original discovery order had directed Nintendo to turn over, among other things, "all complaints of seizures from play of Mega Man X or the Super Nintendo system." In response Nintendo produced numerous documented complaints taken by various customer service representatives, but Nintendo altered the documents by deleting all personal information relative to the people making the complaints. However, Nintendo had not sought a protective order from the court before making the redactions.
In an oral ruling in open court on February 9, 1999, the trial court granted the motion and held Nintendo in contempt, but issued no sanctions. The court stated:
In reviewing the record, it does appear that Nintendo, on an ex parte basis, altered or redacted certain portions of the documents provided. It certainly would have been appropriate, Mr. Daigle, for you or your client to contact the Court in order to determine whether or not that was appropriate.
Without ruling at this point whether or not it was appropriate, the Court does find Nintendo in contempt on that basis. Your client has no authority on an ex parte basis to make that decision. The appropriate manner would be to contact the Court, if necessary, to have the Court conduct an in camera inspection. And, I would sincerely hope that in the future, that it would be handled in an appropriate manner.
* * *
And, Mr. Daigle, I would tell you that the Court's comments were not intended to be a reflection on you, personally. It was clear from the plaintiffs' motion that the plaintiff, in fact, believed that it was not done by you or anyone associated with your firm, but with regard to something that was done in Redmond, Washington by your client.
* * *
The Court has not issued any sanctions at this time. I would make it clear, however, that if there are any future difficulties in that regard, the Court certainly will look back on this particular incident in making its determination of sanctions.
*768 The second contempt ruling was imposed pursuant to plaintiffs' Motion for Default and/or to Establish Liability and Causation and/or to Strike Defendants' Defenses and/or for Other Discovery Sanctions, filed during the course of the trial. That motion arose when plaintiffs discovered there were numerous consumer complaints Nintendo had failed to disclose prior to trial, copies of which were turned over to plaintiffs on the third day of trial (over 200 pages of additional documents). At that time the trial judge addressed defense counsel as follows:
[I]t is not clear that the documents that were provided to the Court once the trial began should not have been included in the first response. It is clear to the Court that there are documents that were included in thosein that package of documents that should have been provided. And there's no way that I believe anyone reading these documents fairly can say otherwise. And I really believe that, Mr. Daigle, you would admit at this point in time, that there were documents included in that package that should have been included in the first response. They clearly are within the parameters that were ordered by the Court.
* * *
My comment was directed to your statement that you didn't have the documents because they were clearly outside of the parameters established by the Court and that's not true. They were not outside the parameters. There were documents included in that package that certainly dealt with the Super Nintendo System and should have been included, without a doubt.
* * *
I'm not talking about you. I'm talking about your clientyour client knew when the responses were-or the materials were given to you in order to make the response.
The court awarded plaintiffs all attorneys' fees and costs associated with the necessary motions and hearings that resulted from Nintendo's failure to comply with discovery, although the judgment did not set a dollar amount.[1]
In the judgment on plaintiffs' Motion for Judgment Notwithstanding the Verdict or in the Alternative for New Trial, the trial court stated the motion for new trial was denied because the plaintiffs failed to prove that the judgment appeared clearly contrary to the law and evidence. In reasons for judgment regarding that ruling, the court stated:
In the charge conference, this Court discussed the verdict form at length with the attorneys. During closing arguments, attorneys from both sides then renegotiated the final verdict form that was given to the jury.
There were no objections from either party to the revised verdict form.
Based upon the above facts, this Court finds that the plaintiffs' motion for judgment notwithstanding the verdict or in the alternative, for new trial should be denied.
On appeal plaintiffs argue two significant reasons why plaintiffs were prejudiced by the content of these documents, and the timing of their late production. Nintendo consistently argued that any seizures had to occur contemporaneously with video game play and Nintendo contended that it had no idea which games were more likely to trigger seizures. In fact, the additional discovery materials plaintiffs obtained *769 during the trial showed that Nintendo had received numerous consumer complaints in which the seizures occurred some time after video game play and that Nintendo had advised certain customers which games were more likely to result in seizures when played.
At that point in the trial Nintendo stipulated that Joey Roccaforte's first cluster of seizures was triggered by his video game play on February 6, 1994, although previously Nintendo had denied that the first cluster of seizures was related to video game play because the first of them began at least 15 minutes after Joey had ceased playing the video game.
A further consequence was that the delayed disclosures occurred after Nintendo invoked a Daubert hearing[2] in an attempt to exclude testimony of plaintiff's expert neurologist, Dr. Terence D'Souza. D'Souza had opined that the Nintendo game was the triggering mechanism behind Joey's first symptomatic manifestation of epilepsy, despite the fact that he had stopped playing the game a few minutes before his first seizure. Nintendo had argued that D'Souza was not medically qualified to render such an opinion and that his opinion was contrary to known medical studies relating to video games and triggered epileptic seizures.
Thus, after Nintendo decided to stipulate to causation of the first cluster of seizures, the stipulation included an acknowledgment that Dr. D'Souza had testified without the benefit of any of the documentation that Nintendo failed to turn over until the third day of trial. In addition, Joey's first treating neurologist, Dr. Jonelle McAllister, had not seen any of those documents until after she gave her deposition testimony and saw them only briefly on the day she testified at trial. As a result, Dr. McAllister changed her original medical opinion during her trial testimony.
Even Nintendo's own expert witnesses, Dr. Tim Frederick (neurologist) and Dr. Donald Horst (human factors/warnings expert), had not seen the late-disclosed documents; thus, their reports and opinions favorable to Nintendo's positionwere based on incomplete and inaccurate information.
La.C.C.P. art. 1471 provides sanctions for failure to comply with an order compelling discovery, as follows:
If a party or an officer, director, or managing agent of a party or a person designated under Articles 1442 or 1448 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1469 or Article 1464, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or *770 any part thereof, or rendering a judgment by default against the disobedient party.
(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.
* * *
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
In addition, La.C.C.P. art. 1473 provides,
If a party or an officer, director, or managing agent of a party or a person designated under Articles 1442 or 1448 to testify on behalf of a party fails ... to serve answers or objections to interrogatories submitted under Article 1457, after proper service of the interrogatories, or to serve a written response to a request for inspection submitted under Article 1461, after proper service of the request, and [sic] court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under Paragraphs (1), (2), and (3) of Article 1471. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
The failure to act described in this Article may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Article 1426.
Relying on these articles, plaintiffs assert that defendant's conduct in redacting and withholding relevant materials was so egregious that the monetary sanctions imposed by the trial court are insufficient to counteract the prejudice to plaintiffs' case.
In Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203, our Supreme Court discussed these articles:
There is a distinction between the sanctions available for failure to comply with discovery and the sanctions available for disobedience of court ordered discovery.... Refusal to comply with court ordered discovery is a serious matter.... Trial judges must have severe sanctions available to deter litigants from flouting discovery orders....
The Louisiana rule, like Federal Rule 37, allows the trial court to sanction a disobedient party with dismissal or a default judgment. Both dismissal and default are draconian penalties which should be applied only in extreme circumstances.... Because the sanctions of dismissal or default involve property rights, those sanctions are generally reserved for the most culpable conduct....
Federal district courts consider four factors before granting a default judgment: (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party's trial *771 preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney....
Dismissal and default are generally reserved for those cases in which the client, as well as the attorney, is at fault. The record must support "a finding that the failure was due to ... wilfulness, bad faith, or fault." [Citations omitted.]
Here, as in Horton, defendant gave incorrect and incomplete responses to discovery. Even when ordered to supplement its responses, defendant delayed and obfuscated, adhering to defenses that a rational fact-finder could very well have concluded were contradicted by the documents defendant eventually was forced to disclose during trial. Prior to trial defendant unilaterally redacted information in documents it provided to plaintiffs, without attempting to obtain a protective order from the court first and without notifying plaintiff it was censoring its responses.
We conclude the trial court's award of monetary sanctions was insufficient. It could not offset the harm done to plaintiffs' case by defendant's deliberate withholding of information about the numerous complaints of video game induced seizures that defendant eventually was forced to disclose. Further, defendant's actions not only included failure to comply with discovery requests, but also disobedience of court orders. A severe sanction is warranted in addition to the monetary sanctions. Accordingly, the trial court's limitation of the penalty to only monetary sanctions was a clear abuse of discretion. See Abadie v. Metro. Life Ins. Co., 00-344 (La.App. 5 Cir. 3/28/01), 784 So.2d 46.
This Court will not hesitate to employ the sanctions allowed by Articles 1471 and 1473 where necessary to prevent miscarriage of justice. See Reeder v. New York Life Ins. Co., 01-148 (La.App. 5 Cir. 6/27/01), 790 So.2d 712.
Though sanctions sought by plaintiffs that we either strike the defenses or even grant a default judgment against defendantmay be warranted, we deem the interests of justice would best be served by vacating the verdict and remanding the matter for a new trial, where the evidence not previously available to plaintiffs may best be presented for consideration by a trier of fact. See Hardy v. Kidder, 292 So.2d 575 (La.1973).
This conclusion addresses plaintiffs' first two issues, regarding denial of the motion for new trial and the motion to strike defenses. The two next issues, concerning the jury verdict form and the jury's findings, are rendered moot by our vacating the judgment.
The final issue is whether the trial court erred in failing to assess specific monetary amounts for the contempt and sanctions rulings. Failure to assess a specific amount was error and we direct the trial court to remedy the omission on remand.[3]
After the appeal was lodged in this court, plaintiffs filed an emergency Motion to Remand to the Trial Court for the Taking of New Evidence. Specifically, *772 they sought to introduce an article from a medical journal that plaintiffs assert defendant hid from them.[4] A panel of this Court denied the motion on the ground that plaintiffs failed to show that evidence of this study was unobtainable with due diligence. That ruling stands and this decision does not affect it.

DECREE
For the foregoing reasons, the final judgment of March 9, 2000 dismissing plaintiffs' claims in conformity with the jury verdict hereby is vacated. The judgment of July 18, 2000 denying plaintiffs' motion for judgment notwithstanding the verdict or for new trial is reversed; judgment hereby is rendered granting a new trial. The judgment of July 18, 2000 granting plaintiffs' motion to hold Nintendo in Contempt of Court and for Sanctions is affirmed, but the trial court is ordered to impose a specific amount of monetary sanctions on remand of this matter.
JUDGMENT OF MARCH 9, 2000 VACATED; JUDGMENT OF JULY 18, 2000 REVERSED AS TO DENIAL OF NEW TRIAL; JUDGMENT OF JULY 18, 2000 AS TO SANCTIONS AFFIRMED AND MODIFIED WITH INSTRUCTION; MATTER REMANDED FOR NEW TRIAL.
NOTES
[1] Defendant sought no review of either contempt ruling or of the imposition of sanctions.
[2] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[3] Strictly speaking, the judgment imposing the monetary sanctions is interlocutory rather than final, because it does not assess a dollar amount; hence, it is not appealable. In the interest of judicial economy, however, since the rest of the case is now before us on appeal, we consider the merits of the sanctions judgment under our supervisory jurisdiction. See Brunet v. Magnolia Quarterboats, Inc., 97-187 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 312, writ denied, 98-990 (La.5/29/98), 720 So.2d 343, cert. den., 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771.
[4] The document at issue is an article and study entitled "The Effect of Video Game Software in Video Game Epilepsy," Epilepsia, 40 (Suppl.4): 31-37.