1 .CANNELLA, Judge.
Rebecca Gundry (Gundry) appeals from a ruling of the Juvenile Court for the *92 Parish of Jefferson, which found her in contempt for violating a condition of her son’s probation and sentenced her to serve time in jail along with other probationary requirements. For the reasons which follow, we reverse and remand.
Gundry is the mother of J.G., age 17, on probation from Juvenile Court. On August 11, 1999, a petition was filed by the district attorney in Júvenile Court against J.G., upon complaint by Gundry, charging J.G. with criminal damage to property valued over $500. On September 8, 1999, the charge was amended to criminal damage to property under $500 and J.G. entered an admission to the petition. The juvenile was adjudicated delinquent and sentenced to the Department of Corrections for 6 months, suspended, and he was placed on active probation until his 18th birthday. A probation contract was executed and signed by J.G., the juvenile’s attorney, Gundry, the probation officer, and the trial __[¿judge. After a time, J.G. was not progressing. He was doing poorly in school. He had missed some school days and had school discipline problems, among other things. On November 28, 2000, his probation officer filed a Rule to Show Cause or Constructive Contempt against the juvenile. Subsequently, on December 20, 2000, the probation officer filed a Motion to Modify Judgment of Disposition Revocation of Probation. Following a hearing, the trial judge granted the motion, amended the disposition, and assigned J.G. to the Correctional Options Program. On January 12, 2001, a new probation agreement was signed by the juvenile, his attorney, Gundry, the probation officer and the trial judge. The agreement provided in pertinent part:

PARENTAL RESPONSIBILITIES ARE:

18.Enforce all guidelines set forth by the Correctional Options Program, Comprehensive Service Plan, and Probation Contract.
19. Provide adequate transportation for the offender to .and from all scheduled appointments.
20. Participate, cooperate, and successfully complete all treatment programs prescribed by the Correctional Options Program.
21. Report all negative and unusual behaviors, activities and transgressions to the Correctional Options Program Probation Officer as soon as possible...
The March of 2001 followup report provided that J.G. was doing well. The May report indicated that he was missing school because of conflicts with his job. The August report indicated that neither J.G. nor Gundry felt that he needed to go to school. The trial judge ordered J.G. to continue in school.
Thereafter, on September 19, 2001, J.G.’s probation officer filed a Rule to Show Cause against Gundry to have her appear in court to explain why she had not complied with the conditions of probation or be found in contempt of court. |4It was alleged that Gundry had violated the conditions of probation in the following particulars:
On September 4, 2001 Ms. Rebecca Gundry put [J.G.] and his younger siblings out of her home. She has indicated she will no longer provide financial, physical or emotional needs for these children. The department of Juvenile Services; Correctional Options Program offered services to prevent the separation, but were refused by Ms. Gundry. The children are living with family friends at this time.
The hearing on contempt was set for October 18, 2001. An Instanter Order was also filed with the court on September 19, *93 2001, alleging that an emergency situation existed and J.G. was in need of care. A custody hearing was set for September 21, 2001 at 9:00 a.m.
On September 21, 2001, J.G., his attorney, Gundry, the probation officer, the district attorney and some witnesses were present in Juvenile Court. - The trial judge first took up the custody of J.G. Gundry was questioned without the benefit of counsel or the waiver of counsel. However, in about the middle of the hearing, the transcript notes “inaudible speech, note on log of tape error-right to counsel waived.” Gundry stated that she is a single parent of three children. She works between 60 and 80 hours a week to pay her bills. She is behind on the bills and on the verge of bankruptcy. She placed her two youngest children with Martha Bruna, a family friend, who does not work and who offered to help. She thought that it was better for them because she works so much and they are left alone. She allowed J.G. to stay at Brandy Diaz’s house for the same reasons. He needs constant supervision and she is not there because of her long work hours. She gave up her apartment and moved in with her boyfriend. She stated that J.G. could live with her, but that she did not think that it was best for him | ^because of her inability to supervise him. The trial judge ruled that J.G.’s custody would be with the Office of Community Service and approved his placement with Brandy Diaz, pending other arrangements.
Immediately following the ruling on custody, the trial judge moved forward with the contempt proceedings against Gundry. There is no evidence in the court record of a waiver of counsel by Gundry. Gundry again stated that she. did not throw her children out into the streets. She stated that she loved them and was trying to do the best she could, although she knew that she did not do everything right. She made arrangements with friends to care for them because she .thought it was in their best interest. She tearfully stated that she loved them and thought that the friends could do a better job caring for them at that time than she could.
The State questioned her about her note for a new car. The probation officer stated that they offered Gundry help or services to keep the family together but she refused assistance. Gundry testified that by the time the probation officer offered assistance she had already given up her apartment and moved everything out. The trial judge expressed the view that Gundry’s priorities were out of line. The trial judge found Gundry in contempt, sentenced her to 6 months in parish prison and suspended the sentence conditioned upon the terms that Gundry serve 6 weekends in jail from Friday night at 6:00 p.m. until Sunday at 6:00 p.m., that she produce proof of her job hours for the past two months and her pay, that she submit to a drug screen, that she produce evidence of all the outstanding bills to which she referred, and that she pay $250 | fiimmediately for items needed by J.G. It is from this contempt ruling and sentence that Gundry appeals.[1] .
On appeal Gundry first argues that the trial judge erred by conducting a contempt hearing on a rule without giving her 48 hours after service before the hearing.
La. Ch.C. art. 1508 provides in pertinent part:
B. A certified copy of the motion and of the rule shall be served on the person charged, in the manner of a subpoena, *94 not less than forty-eight hours prior to the time assigned for trial of the rule.
Gundry alleges that the rule was not served on her more than-48 hours prior to the trial of the rule. The State has not filed an appellee brief in this case. The trial judge, in her reasons for judgment, acknowledged that 48 hours had not passed from the time of service to the time of the hearing. Thus, there is no dispute to Gundry’s allegation on this point and none appears of record. Moreover, the record indicates that the rule, as served on Gundry, set the date of the contempt hearing for October 8, 2001. Without any record notice of a change, the trial judge held the contempt hearing on September 21, 2001, following a custody hearing for the juvenile that was scheduled for that date. We find error in this procedure.
La. Ch.C. art. 1508 is mandatory in its language and does not allow for exception on the time delay between service and hearing. State v. Watson, 465 So.2d 685 (La.1985); Brunet v. Magnolia Quarter-boats, Inc., 97-0187 (La.App. 5th Cir.3/11/98), 711 So.2d 308, writs denied, 98-0990 (La.5/29/98), 720 So.2d 343, certiorari denied, 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999). Proceedings for contempt must be |7strictly construed and the law does not favor extending their scope. Estate of Graham v. Levy, 93-0636, 93-0134 (La.App. 1st Cir.4/8/94), 636 So.2d 287, 290, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167; Brunet, supra. Therefore, we find that, absent compliance with the statutory directives for securing a contempt finding, that finding and sentence must be set aside.
The trial judge in reasons for judgment, stated that the result would have been the same even if Gundry had been given the 48 hour delay. We cannot adopt that view nor do we find it reason to avoid reversal of the contempt finding and jail sentence. The requirement that the person charged received adequate notice is a matter of due process. Further, if Gundry had notice, as provided by law, she might have had time to secure counsel and prepare for the hearing which could have resulted in a different outcome.
In view of our decision on this assignment of error, that the contempt ruling and sentence must be set aside, we find no need to address Gundry’s other assignments of error, concerning inadequate waiver of counsel, vagueness and insufficient evidence to support the contempt finding. These issues aré rendered moot by our decision above.
Accordingly, for the foregoing reasons, we vacate the contempt ruling and sentence and remand the case to the Juvenile Court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. On September 28, 2001, after Gundry had ' served one weekend in jail, this Court stayed the execution of the contempt judgment pending further orders of this Court. State in the Interest of J.G., 01-1120 (La.App. 5th Cir.9/28/01).