hWILLIAMS, Judge.
Defendant, Webster Speedway, Inc., appeals a trial court judgment in favor of plaintiffs, David Peterson Contracting, OWC, Inc., and Jeff Chanler, assessing it with penalties of $3,000 for violation of a temporary restraining order, $375.00 in damages and $75.00 due plaintiffs from a previous race. For the following reasons, we affirm in part and reverse in part.
FACTS
Webster Speedway, Inc. (Speedway) is a stock car race track located in Minden, Louisiana. Prior to the 1994 racing season, Speedway distributed “Official Rules and Specifications” for all racing participants. David Peterson Contracting, OWC, Inc., and Ad Signs, Inc., were sponsors of a race car owned and driven by plaintiff, Jeff Chanler.
On September 24, 1994, Chanler participated in the feature race at Speedway. During the race, he received a “black flag” penalty, which required him to abandon the race and leave the track. Black flags are given by race officials when a car is unsafe or when a driver operates in a manner that could endanger other drivers. Chanler refused to honor the black flag and continued to circle the track until all of the race cars were stopped under a caution flag. At that point, a Webster Parish deputy walked onto the track and informed Chanler that he had to leave the track. Rather than leave, Chanler continued circling the track and drove around an approaching race announcer who was attempting to stop his ear. A wrecker truck proceeded onto the track with its lights flashing in an unsuccessful attempt to block Chanler’s path, but Chanler drove onto the track’s infield and avoided the truck. Eventually, Chanler left the track after his sponsors intervened.
Approximately two days later, the owner of Speedway, Inc., Ellis Heard, gave Chanler written notification that he had been suspended from the race track indefinitely, and that he had lost all of his racing points for the 1994 racing season because of the September 24, 1994 incident. In response, Chanler, Peterson and OWC, Inc. filed a petition for injunctive relief in the Minden City Court. The trial court issued a temporary restraining order enjoining Speedway from preventing Chanler or his car from racing on |2October 1, 1994, declaring a final *656 points standing, and from interfering with Chanler or his crew.
Although Ellis Heard was Speedway’s registered agent for service of process, the petition, temporary restraining order, and rule to show cause were personally served on Bobbie Heard, Vice-President of Speedway, by Steve Fomby, a Webster Parish deputy. The documents were served on Ms. Heard at approximately 6:30 p.m. on the day of the race. Deputy Fomby testified that he told Ms. Heard that there was a court order and asked her whether she would comply. She responded that the car could race, but Chan-ler would not be allowed to drive.
At the October 10, 1994 hearing on the “Rule to Show Cause,” the trial court ruled that Speedway’s noncompliance with the court’s TRO would also be considered. After the hearing, the trial court ordered Speedway to pay damages of $375.00, representing the amount Chanler could have won if allowed to race, and to pay the sum of $75.00 for the race he won on September 24, 1994. The trial court also ordered Speedway to pay $3,000.00 for its violation of the temporary restraining order. Speedway appeals, challenging the propriety of the trial court’s rulings.
DISCUSSION

Contempt (Assignments of Error Nos. S, k, 5, 6)

Speedway argues that the trial court erred in considering the issue of contempt without providing sufficient notice, and in adjudicating Speedway in contempt of court.
The wilful disobedience of any lawful judgment or order of the court constitutes a constructive contempt of court. LSA-C.C.P. Art. 224. A person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after a trial by the judge of a rule to show cause why he should not be adjudged guilty of contempt and punished accordingly. Pulley v. Pulley, 587 So.2d 116 (La.App. 2d Cir.1991); LSA-C.C.P. Art. 225(A).
In this ease, the trial court twice referred to its inclination to award “penalties” for the violation of the TRO. The judge subsequently stated that he was ordering Speedway |3to pay the sum of $3,000.00 for the disobedience of the court’s order. Thus, the record shows that the trial court’s ruling actually constitutes a judgment of contempt and punishment for Speedway’s noncompliance with the temporary restraining order rather than an assessment of damages.[1]
A person may be punished for committing constructive contempt of court only after a rule for contempt has issued and he has been allowed at least 48 hours to prepare his defense.[2] LSA-C.C.P. Art. 225(A); Official Revision Comments (a). Furthermore, any alleged instances of noncompliance with a previous court order must be correctly, precisely and explicitly set forth in the rule for contempt. Geo-Je’s Civic Ass’n, Inc. v. Reed, 525 So.2d 192 (La.App. 1st Cir.1988). The requirements of Article 225(A) are mandatory. Id.
Here, the record does not contain evidence that a rule for contempt was issued and served upon the defendant. Consequently, as defendant correctly argues, Speedway did not receive notice that it would be required to show cause why it should not be held in contempt of court. In fact, at the hearing on the rule to show cause, the trial court announced for the first time that an additional issue before the court would be the defendant’s violation of and noncompliance with the temporary restraining order. *657 Therefore, the trial court erred in conducting the contempt hearing and assessing the $3,000.00 penalty against Speedway for violation of the temporary restraining order. We reverse that part of the judgment. Since defendant was not given sufficient notice as required by Article 225(A), that portion of the judgment, which amounts to an adjudication of contempt of court and the assessment of penalties in the amount of $3,000.00 and $375.00 is reversed. Further, since we are reversing the penalty portion of |4the judgment because of the above procedural irregularities, we pretermit a discussion of whether the evidence was sufficient to prove Speedway was guilty of constructive contempt of court.

Assignment of Error No. 8

Speedway also argues that the trial court erred in ordering the restoration of Chanler’s racing points.
Owners of real property, which is used by the public for purposes of vehicular travel by permission of the owner, may regulate such use as may seem best to such owner. LSA-R.S. 32:25. The record shows that on September 24, race officials black flagged Chanler’s vehicle after concluding that he was driving improperly. Nevertheless, despite the efforts of a deputy sheriff, the race announcer and a wrecker truck, Chanler continued to circle the track for approximately thirty minutes. Chanler continued to circle the track after all of the other cars had been stopped under a red danger flag.
As a result of Chanler’s unruly conduct, Section 1(B)(5) of the Webster Speedway Official Rules and Regulations clearly gave track management the authority to suspend him from racing for the remainder of the season. All participants received a copy of these rules in April 1994. On May 7, 1994, the track printed a memorandum expanding the rules by stating that a driver delaying a race could also lose all of his points. Although the preponderance of the evidence does not establish that Chanler directly received the May memo, we do not interpret the authority of the track so narrowly. The Official Rules and Regulations state that management may make additions to the rules when deemed necessary for the benefit of all concerned. The change made by the May memorandum was designed to enhance the means available to enforce the safety of drivers, spectators and to insure the orderly progress of the races.
Recognizing that private track owners possess the authority to regulate the conduct of race participants, we view management’s revocation of Chanler’s racing points as reasonable exercise of that authority. Therefore, we reverse the trial court’s judgment in this regard.
IsCONCLUSION
The record shows that Speedway was not afforded the procedural safeguards required for a contempt proceeding that results in punishment. Further, the evidence does not support the award of $375.00 as damages. Finally, the forfeiture of Chanler’s racing points does not exceed the authority of the track management. For the above stated reasons, we reverse all portions of the trial court’s judgment, except that portion which awards plaintiffs the sum of $75.00 for winning the heat race on September 24, 1994. Costs, both here and below, are assessed one-half to appellant and one-half to appel-lees.
AFFIRMED IN PART AND REVERSED IN PART.

. The trial court referred to the $375.00 damage award as penalties. Even if we were to consider the $375.00 assessment as damages, such an award is not supported by the evidence. The trial court based this award on the amount of prize money Chanler could have received if he had entered and then won the October 1, 1994 races. Since this award is entirely speculative, the trial court erred in this regard.

. According to the trial court's minutes, the case proceeded to trial by agreement of the parties. The trial transcript does not support this minute entry. The parties never agreed that the violation of the restraining order would be considered at the hearing.