839 So.2d 1085 (2003)
Darryl GEORGE
v.
Alfredia M. NERO.
No. 02-1140.
Court of Appeal of Louisiana, Third Circuit.
March 5, 2003.
Lloyd Dangerfield, Keller & Dangerfield, Lafayette, LA, For Defendant/Appellant, Alfredia M. Nero.
Darryl George, Oakland, CA, In Proper Person.
Court composed of JOHN D. SAUNDERS, OSWALD A. DECUIR, and GLENN B. GREMILLION, Judges.
DECUIR, Judge.
In this ongoing dispute over the custody, child support, and visitation rights concerning their child, Darryl George filed what the district court considered to be a rule for contempt, change of custody, and costs against Alfredia Nero. After informal proceedings involving sworn testimony via telephone by George and live testimony by Nero, Nero was found in contempt, ordered to pay a fine to George, sentenced to ten days in jail, and denied future child support payments. She appeals. Finding *1086 manifest error in the judgment of the trial court, we reverse.
Carletta George was born in 1991 in Oakland, California, to Darryl George and Alfredia Nero, an unmarried couple. After the child's birth, Nero moved to Georgia, then to Louisiana, then back to Georgia. George remained in California. For some period of time early in Carletta's life, George was incarcerated in California. He was ordered to pay child support which was collected by a child support enforcement agency in California. He was granted visitation rights by a Louisiana court, which court also ordered the parties to share the cost of the child's travel for visits with her father. The record is unclear as to how often visitation has occurred and at whose expense.
The present controversy arose with a letter written by George in December of 2001 to the district judge of the Louisiana court which had heard his case in September of 2000. In the letter, George complained that Nero had again "denied [his] visitation this past summer without any justification." He asserted, "Ms Nero left California to keep me away from my child, now she has left Louisiana without notifying me of her intentions and how it might effect my visitation order." He requested that "custody be transferred to me as well as support be suspended until she stops harboring my child." On the bottom of the letter is a handwritten judicial order dated March 6, 2002, setting the matter for hearing "on the next available rule docket per telephone conference." The court then took this letter to be a rule for contempt and request for change of custody, although no contempt hearing was requested.
Nero was then issued a summons to appear for an intake conference before a hearing officer and for a hearing on a rule to show cause before a judge, both scheduled for May 15, 2002. She appeared on the specified date, unrepresented by counsel, and George called in from California, also without legal representation. There is no indication in the record that an intake conference was conducted. The judge swore the parties in, then heard each of them talk. George essentially gave some very general complaints about Nero failing to contact him about the past summer's visitation and trying to hurt his relationship with their child. The judge asked George if he had other testimony to present; he replied in the negative. Nero, however, had two family members with her, but neither testified on her behalf. The transcript was unclear as to whether Nero wanted them to testify or not. Nero apparently had phone records with her also, which she referred to in her testimony in an effort to refute George's allegations that she never contacted him about visitation; the records were not offered into evidence. Finally, Nero commented that she expected George to send a plane ticket for the child to make the trip to California, but he never did. In a previous judgment, George was ordered to pay all travel costs which was offset by a reduction in his child support payments.
At the end of the hearing, Nero was found in contempt "for failing to allow summer visitation." She was ordered to serve ten days in jail, which sentence began immediately. She was also ordered to pay $500.00 to George "to offset his expenses," and was assessed all court costs. The visitation schedule, which had been implemented by a September 25, 2000 judgment, was modified, and George's child support obligation was "suspended until further orders of this Court, due to her contemptuous behavior." The court ordered psychological testing to be done in Louisiana to determine if a change of custody might be in order.
*1087 Contempt proceedings are governed by the Louisiana Code of Civil Procedure. They are formal proceedings and are conducted to determine if a wilful violation of a court's direct order has occurred. The rules are codified at La.Code Civ.P. arts. 221-227 and La.R.S.13:4611. Article 224 provides in part:
A constructive contempt of court is any contempt other than a direct one.
Any of the following acts constitutes a constructive contempt of court:
....
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]
Additionally, Article 227 provides:
A person may not be adjudged guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law.
The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in R.S. 13:4611.
Finally, the penalty statute, La.R.S. 13:4611, contains the following provisions:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts, and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows.
....
(d) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.
(e) In addition to or in lieu of the above penalties, when a parent has violated a visitation order, the court may order any or all of the following:
(i) Require one or both parents to allow additional visitation days to replace those denied the noncustodial parent.
(ii) Require one or both parents to attend a parent education course.
(iii) Require one or both parents to attend counseling or mediation.
In Brunet v. Magnolia Quarterboats, Inc., 97-187 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, writ denied, 98-0990 (La.5/29/98), 720 So.2d 343, cert. denied, 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999), the court gave a thorough explanation of contempt procedure:
To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. In making this determination, the trial court is vested with great discretion. City of Kenner v. Jan P. Jumonville, Placide Jumonville, p. 5-6, 97-125 (La.App. 5th Cir.8/27/97), 701 So.2d 223; Reeves v. Thompson, 95-0321 (La.App. 4th Cir.12/11/96), 685 So.2d 575, 579. Proceedings for contempt must be strictly construed, and the law does not favor extending their scope. Estate of Graham v. Levy, 93-0636, 93-0134 (La.App. 1st Cir.4/8/94), 636 So.2d 287, 290, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167.
Constructive contempt may be found on a rule to show cause, with defendant being allowed at least forty-eight hours, from the date he or she receives notice, to prepare a defense. La. C.C.P. art. 225. The motion for the rule may issue on the court's own motion or on motion of a party and shall state the facts alleged to constitute the contempt. Id. The due process limitations on summary contempt procedures were discussed in State v. Watson, 465 So.2d 685, 687 (La. 1985); the court stated:

*1088 In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) discusses the due process limitations on summary contempt procedures:
Except for a narrowly limited category of contempts, due process of law as explained in the Cooke Case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, and where immediate punishment is essential to prevent `demoralization of the court's authority' before the public. If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires ... that the accused be accorded notice and a fair hearing as above set out. 333 U.S. at 275, 276, 68 S.Ct. at 508, 509, 92 L.Ed. at 695.

Pittman Const. Co., Inc. v. Pittman, 96-1079 (La.App. 4th Cir.3/12/97), 691 So.2d 268, 273.
Furthermore, a contempt proceeding is designed for the vindication of the dignity of the court rather than for the benefit of a litigant. Nungesser v. Nungesser, 558 So.2d 695, 701 (La.App. 1st Cir.1990). Thus, the court cannot order a fine or penalty to be paid to a litigant because such payment does not vindicate the court. City of Kenner v. Jan P. Jumonville, Placide Jumonville, p. 8, 701 So.2d 223. The fine must be made payable to the court itself. Id.

711 So.2d 308, 313.
In Havener v. Havener, 29,785 (La.App. 2 Cir. 8/20/97), 700 So.2d 533, the appellate court determined that a contempt judgment was improperly rendered because of the trial court's failure to recite the facts upon which the finding of contempt was based:
The provisions of C.C.P. art. 225(B) are mandatory and must be strictly construed. Brown v. Brown, 493 So.2d 671 (La.App. 2d Cir.1986). The failure of a trial court to recite facts constituting contempt mandates a reversal of a judgment of contempt. Brown, supra.

....
While we cannot say the trial judge was incorrect in finding that the "lack of communications" between the parties caused problems, we do not believe that this statement alone is sufficient to meet the recitation of facts required for a finding of contempt. The contempt statutes must be strictly construed. Brown, supra. Accordingly, we amend the trial court judgment to vacate the finding contempt on the part of Mr. Havener.
700 So.2d 533, 538. (Footnote omitted.)
Our review of the record reveals manifest error in the proceedings conducted below. George's letter to the court, which was styled as a "rule for contempt" by court personnel, does not request a contempt hearing or service on Nero, nor does it set forth explicit and precise allegations of disobedience to a visitation order. In David Peterson Contracting v. Webster Speedway, Inc., 27,427, p. 3 (La.App. 2 Cir. 9/27/95), 661 So.2d 654, 656, the court held that "alleged instances of noncompliance with a previous court order must be correctly, precisely and explicitly set forth in *1089 the rule for contempt." To the extent that the finding of contempt may have also been based in part on Nero's failure to pay a previously ordered fine or court costs, we note, first, the September 25, 2000 judgment specifically stated that the fine was suspended, contrary to the comments made by the trial judge at the May 15, 2002 hearing in chambers, and second, there was no formal allegation made against Nero for failing to make such payments, as due process requires.
Our law does not provide for testimony via telephone in a proceeding as consequential as a contempt hearing. The trial court's intention may have been to conduct an informal intake conference in accordance with local rules; if so, its transformation of the proceeding into a trial on contempt charges was wholly improper.
Additionally, the trial court's punishment of Nero went well beyond the scope of La.R.S. 13:4611(d) and (e). The assessment of a fine to be paid to George, rather than to the court was in error and in violation of the purposes of contempt proceedings. The indefinite discontinuance of child support payments was unauthorized, illegal, and harmful to the child, the rightful beneficiary of support payments. The trial court further abused its discretion in requiring the immediate imprisonment of Nero, a Georgia resident with a child for whom she must provide supervision and support. The court gave Nero no time to seek review of its decision or otherwise obtain guidance or counsel on the matters at hand. We find the trial court abused its discretion in imposing sentence upon Nero.
Our review of the transcript reveals very little evidence to support the factual findings of the trial court. However, because we are reversing the finding of contempt on the part of Nero based on procedural irregularities, we need not address whether the evidence was sufficient to support the conclusions reached by the trial court on the merits of the contempt proceedings. Nevertheless, we do find a complete lack of factual support for the air fare assessment to Nero for the child's visits with her father, given the fact that his child support payments were previously reduced so that he could cover the travel expenses. We also find no evidence of a need for psychological evaluations in this case.
For the above and foregoing reasons, the judgment of the trial court is reversed. Costs of the appeal are assessed to Darryl George.
REVERSED.